James E. McINTOSH and Sondra
McIntosh, Appellants
(Plaintiffs Below),

v.

MELROE COMPANY, A DIVISION OF
CLARK EQUIPMENT CO., INC., a
Delaware corporation, and Ruxer
Farms, Inc., an Indiana Corporation,
Appellees (Defendants Below ).

No. 71S03–9805–CV–297.

Supreme Court of Indiana.

May 26, 2000.

Jerry J. Phillips, Knoxville, Tennessee, Roger L. Pardieck, Seymour, Indiana, John F. Vargo, Janet O. Vargo, Indianapolis, Indiana, Attorneys for Appellants.

Robert G. Zeigler, Indianapolis, Indiana, Attorney for Appellees.

Indiana Trial Lawyers Association, Edgar W. Bayliff, P. Gregory Cross, Thomas C. Doehrman, Robert L. Justice, Henry J. Price, Mary Beth Ramey, Indianapolis, Indiana, Attorneys for Amicus Curiae.

Indiana Defense Lawyers Association, John D. Nell, Julie L. Michaelis, Joseph R. Alberts, Indianapolis, Indiana, Product Liability Advisory Counsel, Inc., Hugh F. Young, Jr., Reston, Virginia, Lloyd H. Milliken, Jr., Todd J. Kaiser, Nelson D. Alexander, T. Joseph Wendt, Indianapolis, Indiana, Attorneys for Amici Curiae.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case deals with the validity of the provision in the Product Liability Act that bars product liability claims for injuries sustained more than ten years after the product is delivered to its "initial user or consumer." The plaintiffs argue that this provision violates their constitutional right under Article I, Section 12 of the Indiana Constitution to a remedy by due course of law. They also contend that it violates Article I, Section 23 which prohibits the grant of privileges and immunities not equally applicable to all. We hold that the provision is a permissible legislative decision to limit the liability of manufacturers of goods over ten years old and does not violate either constitutional guarantee.

### Factual and Procedural Background

The facts of this case are not in dispute. On June 9, 1993, James McIntosh was injured in an accident involving a Clark Bobcat skid steer loader manufactured by Melroe. McIntosh and his wife filed suit alleging that his injuries and her resulting loss of companionship were caused by a defect in the loader. Melroe responded with a motion for summary judgment based on the ten-year statute of repose, codified at Indiana Code § 34–20–3–1(b).[1]

---

1. At the time this suit was brought, the Product Liability Act appeared at §§ 33–1–1.5–1 to 33–1–1.5–10. It is now codified at §§ 34–20– 1–1 to 34–20–9–1. References in this opinion are to the current version.

That section provides that "a product liability action must be commenced ... within ten (10) years after the delivery of the product to the initial user or consumer." Melroe designated evidence establishing that the loader had been delivered to its initial user on September 9, 1980, almost thirteen years before the accident. The McIntoshes did not dispute this evidence, but replied that the statute of repose violated their rights under Article I, Sections 12 and 23 of the Indiana Constitution. The trial court granted Melroe's motion and the Court of Appeals affirmed. Because the material facts are not in dispute, the appeal presents only an issue of law. We granted the McIntoshes' petition to transfer and now hold that the statute of repose is constitutional.

## I. Article I, Section 12

Article I, Section 12 of the Indiana Constitution provides, in relevant part: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." The McIntoshes argue that the statute of repose violates Section 12 because it "abrogates all of the tort protections provided by common law," and these are claimed to be guaranteed by the "due course of law" provision of Section 12.

Melroe contends that this case is governed by our decision in *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 530, 418 N.E.2d 207, 213 (1981), which held that the statute of repose does not violate Article I, Section 12. The McIntoshes assert that *Dague* addressed only the provision in Section 12 that "all courts shall be open" and did not deal with the provision that "every person, for injury done to him in his person ... shall have remedy by due course of law." Although *Dague* itself did not explicitly limit its holding to the "open courts" provision, at least two members of this Court suggested a decade ago that *Dague* did not fully address the constitutionality of the statute of repose under Section 12. *See Covalt v. Carey Canada, Inc.*, 543 N.E.2d 382, 387–90 (Ind.1989) (dissenting opinions of Shepard, C.J., and

Dickson, J., stating that the statute of repose "is still susceptible to challenges under Article 1, Sections 12 and 23"). The McIntoshes now squarely raise this issue.

### A. Methodology

■ We agree with the dissent that the various frequently invoked constitutional talismans—constitutional text, history of the times, intent of the framers, etc.—are proper keys to the interpretation of Article I, Section 12. *See Ajabu v. State*, 693 N.E.2d 921, 928–29 (Ind.1998) ("In construing the Indiana Constitution ... [we] look to 'the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions.'") (quoting *Boehm v. Town of St. John*, 675 N.E.2d 318, 321 (Ind.1996)); *Collins v. Day*, 644 N.E.2d 72, 75–76 (Ind.1994). But apart from the text itself, precedents of this Court, and precedents from other states with similar provisions, we find no relevant guideposts on this point. In particular, there appears to be no unique Indiana history surrounding the adoption of this Clause in 1816 or its redrafting in 1851. *See Journal–Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 484 (Ind.1999) (Dickson, J., dissenting).

### B. The Branches of Federal Due Process and State Article I, Section 12 Doctrine

By 1986, this Court could correctly observe that there was a "substantial line of cases treating the 'due process' clause of the federal constitution and the 'due course' clause of the Indiana Constitution as interchangeable." *White v. State*, 497 N.E.2d 893, 897 n. 4 (Ind.1986). *White* addressed claims of violation of state and federal constitutional rights in accepting a guilty plea to a criminal charge. For the quoted proposition, *White* cited three cases that addressed federal due process and state Article I, Section 12 claims as if there were no difference between them. The

first was a case striking down a zoning restriction against gasoline stations in areas that permitted other commercial uses on the ground that the restriction constituted a taking that was not justified by safety concerns and therefore violated both constitutions. *See Board of Zoning Appeals v. La Dow,* 238 Ind. 673, 676–78, 153 N.E.2d 599, 601 (1958). The second, *Dean v. State ex rel. Board of Medical Registration & Examination,* 233 Ind. 25, 30–31, 116 N.E.2d 503, 506 (1954), dealt with a claim that legislative regulation of the medical profession was "unconstitutional" and held that the regulatory program in question "did not violate the Due Process Clause of either the federal or state constitutions." The third, *Paul v. Walkerton Woodlawn Cemetery Ass'n,* 204 Ind. 693, 699–701, 184 N.E. 537, 540 (1933), upheld assessments by the managers of a cemetery association as justified by the articles and bylaws, and therefore not a violation of the due process rights of the member lot holders. Consistent with this precedent, this Court recently noted that, "[t]he same analysis is applicable to both" the federal Due Process Clause and the state Due Course of Law Clause. *Indiana High Sch. Athletic Ass'n v. Carlberg,* 694 N.E.2d 222, 241 (Ind.1997) (considering claims that the IHSAA's procedures for addressing student-athlete eligibility were constitutionally defective).

The two constitutional provisions do share certain commonalities. Both prohibit state action that deprives a person of a protectable interest without a fair proceeding. *See id.* Both also require, as a threshold matter, that the claimant have a "protectable interest." *See id.* (citing *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *see also Sidle v. Majors,* 264 Ind. 206, 223, 341 N.E.2d 763, 773–74 (1976) ("'The inquiry, in every case, must be directed to the nature of the right alleged to have been infringed upon.'").

■ This is not to say, however, that the "open courts" or "remedies" clause of Article I, Section 12 is in all applications to be equated with the due process provisions of the Fifth and Fourteenth Amendments. In broad brush, the federal provisions guarantee procedural and substantive due process rights. Procedural rights ensure, for example, that a party will be given "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Procedural rights are found in both the civil context, where due process imposes requirements of notice, a right to a hearing, etc., as well as the criminal context, where it is the source of an array of criminal procedural rights, either directly through the Due Process Clause of the Fifth Amendment or via the Due Process Clause of the Fourteenth Amendment.

The "substantive" due process strain declares some actions so outlandish that they cannot be accomplished by any procedure. In earlier times, this took the form of preservation of property and contractual rights. *See, e.g., Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). It reached a highwater mark in cases invalidating progressive era and New Deal legislation, most notably the now discredited *Lochner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), which struck down a state law limiting the work week to sixty hours. This doctrine remains today as a constitutional bar to actions that "shock the conscience," *see County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), despite the recognition that "guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended," *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

Article I, Section 12 of our State Constitution also has multiple strains, but they are not the same as the federal pair. The first sentence of Article I, Section 12, the remedies clause of our State Constitution, prescribes procedural fairness. It guarantees a "remedy by due course of law" for injuries to "person, property, or reputa-

tion." By its terms, this provision applies only in the civil context.[2] It omits any reference to deprivation of "life, liberty, or property," which is the trigger of due process requirements in the criminal context. Article I, Section 12 also differs from the due process clauses by providing that the courts "shall be open," a requirement that seems meaningful only to civil litigants.

In the context of a procedural right to "remedy by due course of law" in a civil proceeding, as *IHSAA* held, the Indiana Constitution has developed a body of law essentially identical to federal due process doctrine. The same is not true in the criminal context. To be sure, we find occasional references to the nonexistent "due process clause of the state constitution," and some broad statements such as the quoted footnote from *White, supra*. It is nevertheless very clear that Indiana constitutional law dealing with criminal procedural guarantees varies from the federal constitutional law embodied in the Bill of Rights and now for the most part "incorporated" by the Fourteenth Amendment Due Process Clause.[3] Indeed, state criminal procedural doctrines have almost uniformly developed, not by reference to Article I, Section 12, but rather under the various other more specific provisions that make up our state Constitution's counterpart to the Bill of Rights. Finally, there is a strain of Article I, Section 12 doctrine that is analogous to federal substantive due process. As elaborated below, in general this doctrine imposes the requirement that

legislation interfering with a right bear a rational relationship to a legitimate legislative goal, but does not preserve any particular remedy from legislative repeal.

To presage and capsulize our conclusions under these differing lines of Section 12 doctrine, the Product Liability Act statute of repose is consistent with each. In terms of pure civil procedural due process analysis, there is no issue. The bar of the statute of repose in the Product Liability Act does not purport to regulate the procedure in the courts. Nor is the open courts requirement violated because, as *Dague* held, it remains the province of the General Assembly to identify legally cognizable claims for relief. If the law provides no remedy, denying a remedy is consistent with due course of law. Finally, there is no state constitutional "substantive" due course of law violation because this legislation has been held to be, and we again hold it to be, rationally related to a legitimate legislative objective. It is debatable whether the Product Liability Act eliminated a common law remedy, but even if it did, there is no substantive constitutional requirement that bars a statute from accomplishing that.

### C. *The Constitution Did Not Freeze the Common Law*

■ The McIntoshes argue that they have a constitutional right to a remedy for their injuries because the framers of the 1851 Constitution "decided not to give the

---

**2.** The second sentence of Article I, Section 12 reads: "Justice shall be administered freely, and without purchase, completely, and without denial; speedily, and without delay." This provision has been the basis of criminal speedy trial claims. *See, e.g., Lee v. State*, 684 N.E.2d 1143, 1145–46 (Ind.1997). No other criminal rights have been derived from Section 12 except by the loosest mention, without analysis, of "due process." There are dozens of cases referring to "due process" under the Indiana Constitution in this manner. *See, e.g., Douglas v. State*, 490 N.E.2d 270, 272 (Ind.1986) ("Denial of due process and grounds for reversal arise under the Indiana Constitution Article I, § 12 and the Fourteenth Amendment when the police or the

prosecuting lawyers negligently withhold material evidence."); *Malone v. State*, 660 N.E.2d 619, 630 (Ind.Ct.App.1996) ("As a person accused of a criminal offense, [defendant] had a constitutional due process right to a fair trial.") (citing U.S. Const. amends. V, XIV; Ind. Const. art. I, §§ 12, 13).

**3.** *See, e.g., Peterson v. State*, 674 N.E.2d 528 (Ind.1996), and *Brown v. State*, 653 N.E.2d 77 (Ind.1995), dealing with differences in the search and seizure doctrines under due process implementation of federal Fourth Amendment law compared to Indiana Constitution Article I, Section 11 doctrine. Neither case makes mention of Article I, Section 12.

General Assembly broad powers to abolish the common law." From this they suggest that they have a protectable constitutional right to the remedy provided by the common law for product liability injuries. This amounts to a claim that common law remedies may not be abolished. It is fundamentally a claim that these remedies constitute a protected species similar to the rights thought embedded in the constitution by substantive due process. Although *Dague* did not address this contention in the context of upholding the Product Liability Act's statute of repose, precedent strongly rejects it. This Court has long recognized the ability of the General Assembly to modify or abrogate the common law. *See Martin v. Richey,* 711 N.E.2d 1273, 1282–83 (Ind. 1999); *Dague,* 275 Ind. at 529, 418 N.E.2d at 213; *Sidle,* 264 Ind. at 226, 341 N.E.2d at 775; *Pennington v. Stewart,* 212 Ind. 553, 559, 10 N.E.2d 619, 622 (1937) (abolishing the common law tort of alienation of affections); *cf. May v. State,* 133 Ind. 567, 570, 33 N.E. 352, 353–54 (1893) ("We think it quite clear that there may be a claim or demand without any right to sue for its recovery.").[4] "Indiana courts have uniformly held that in cases involving injury to person or property, Article I, § 12 does not prevent the legislature from modifying or restricting common law rights and remedies." *State v. Rendleman,* 603 N.E.2d 1333, 1336 (Ind.1992) (upholding the Tort Claims Act); *accord Jamerson v. Anderson Newspapers, Inc.,* 469 N.E.2d 1243, 1249–50 (Ind.Ct.App. 1984) (upholding shield law protecting news media from revealing their sources), *overruled on other grounds by Milkovich*

*v. Lorain Journal Co.,* 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). In sum, the courts of this State, like those of most others, "generally agree that the constitutional assurance of a remedy for injury does not create any new substantive rights to recover for particular harms. Rather, the clause promises that, for injuries recognized elsewhere in the law, the courts will be open for meaningful redress." Jennifer Friesen, *State Constitutional Law* § 6–2(c) (2d ed.1996).

Although there is a significant split in other states[5] as to whether provisions similar to our "remedy by due course" provision permit the legislature to impose a statute of repose in product liability cases, we agree with the Supreme Court of Oregon that "[t]he legislature has the authority to determine what constitutes a legally cognizable injury." *Sealey v. Hicks,* 309 Or. 387, 788 P.2d 435, 439 (1990). Indeed, we believe that there is a very powerful reason that the General Assembly must have the authority to determine what injuries are legally cognizable, i.e., which injuries are wrongs for which there is a legal remedy. A contrary view implies a static common law that is inconsistent with the evolution of legal doctrine before and after 1851. Perhaps equally important, if we are to find some remedies chiseled in constitutional stone, we wander into the area of "scarce and open-ended" guideposts for identifying which remedies are of constitutional dimension, and which are not.

■ Presumably for these reasons, we have long held that the General Assembly has the authority to modify the common

---

**4.** We agree with the dissent that *Pennington* is unusual because the common law tort of alienation of affections depended on the obsolete concept of a wife as her spouse's property. Nevertheless, that case stands for the proposition that the common law was not frozen in 1851 with the adoption of our constitution, and that the legislature may constitutionally abolish causes of action that existed at common law. It does not invoke the federal Equal Protection Clause to override the state law notion of a spouse as property.

Rather, it simply holds that the spouse is not "property," despite the common law view to the contrary. As such, it stands for the proposition that the legislature may abolish a claim for "injury" to "property" at common law.

**5.** State "courts addressing the question have split almost evenly on whether remedy guarantees impose significant substantive limits on legislative power to alter common law remedies." Friesen, *supra,* § 6–1.

law and that there is no "fundamental right" to bring a particular cause of action to remedy an asserted wrong. *Rohrabaugh v. Wagoner,* 274 Ind. 661, 664–65, 413 N.E.2d 891, 893 (1980). Rather, because individuals have "no vested or property right in any rule of common law," the General Assembly can make substantial changes to the existing law without infringing on citizen rights. *Dague,* 275 Ind. at 529, 418 N.E.2d at 213; *accord Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 386, 404 N.E.2d 585, 593–94 (1980); *Lamb v. Wedgewood South Corp.,* 308 N.C. 419, 302 S.E.2d 868, 880 (1983) (" 'The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed.' "); *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715, 720 (1978) ("[N]o one 'has a vested right in the continued existence of an immutable body of negligence law.' "); *Gibson v. West Virginia Dep't of Highways,* 185 W.Va. 214, 406 S.E.2d 440, 451 (1991) (statute of repose does not violate the remedy by due course of law provision because no cause of action had accrued, and therefore no right had vested at time the statute of repose ended). Because no citizen has a protectable interest in the state of product liability law as it existed before the Product Liability Act, the General Assembly's abrogation of the common law of product liability through the statute of repose does not run afoul of the "substantive" due course of law provision of Article I, Section 12.

D. *If "Due Course of Law" Provides No Remedy, None Is Required by the Constitution*

In this case, the General Assembly has determined that injuries occurring ten years after the product was delivered to a user are not legally cognizable claims for relief. Accordingly, the McIntoshes are not entitled to a "remedy" under Section 12. *See Shook Heavy & Envtl. Constr. Group v. Kokomo,* 632 N.E.2d 355, 362

(Ind.1994) ("Because [plaintiff] does not have a property interest in the award of the contract ... article I, section 12, of our constitution does not provide plaintiff with a cause of action...."). Thus, the statute of repose " 'does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action from ever arising.... The injured party literally has *no* cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress.' " *Lamb,* 302 S.E.2d at 880 (quoting *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662, 667 (1972)); *accord Sealey,* 788 P.2d at 439; *Freezer Storage, Inc.,* 382 A.2d at 720; *Gibson,* 406 S.E.2d at 451.

*Martin v. Richey,* decided last year by this Court, does not affect this analysis. *See* 711 N.E.2d at 1273. In that case, the plaintiff had a cause of action that accrued before the applicable statutory period had run but did not discover that she had it, and in the exercise of reasonable care could not have discovered it. We held that the application of the statute of limitations to cut off her accrued claim before it reasonably could be brought was an unreasonable and unconstitutional impairment of an existing and recognized remedy. *See id.* at 1284–85. Here, however, the statute extinguished any cause of action before the plaintiffs' claim accrued. Unlike the Medical Malpractice Act as applied in *Martin,* under the Product Liability Act as applied here, no one with an accrued claim is in the position of having the claim but no practical means of asserting it. The legislature has provided that after the product is in use for ten years, no further claims accrue. That is not an unreasonable exercise of legislative power. It is further ameliorated by the provision that claims accruing in the last two years of the ten-year period may be brought within two years after accrual.[6]

---

**6.** The statute provides that if a cause of action accrues at least eight years but less than ten years after the initial delivery a plaintiff may sue within two years after the cause of action accrues. Ind.Code § 34–20–3–1(b) (1998).

■ Procedure must be according to "due course of law" and courts must be open to entertain claims based on rules of law. Those rules of law, in turn, can be derived either from the common law or prescribed by statute. Thus, although the state constitution requires courts to be open to provide remedy by due course of law, legislation by rational classification to abolish a remedy is consonant with due course of law. If the law provides no remedy, Section 12 does not require that there be one.

Finally, the dissent concludes that Article I, Section 12 guarantees to each citizen "a substantive right to remedy for injuries suffered." 729 N.E.2d at 988. We think this confuses "injury" with "wrong." There is not and never has been a right to redress for every injury, as victims of natural disasters or faultless accidents can attest. Nor is there any constitutional right to any particular remedy. Indeed, as we have pointed out, some forms of "wrong" recognized at common law have long since been abolished by the legislature without conflict with the Indiana Constitution. *See, e.g., Sidle,* 264 Ind. at 206, 341 N.E.2d at 763 (upholding guest statute). Ironically, the wrong the dissent contends in this case to be preserved by the constitution against legislative interference, strict liability for product flaws, did not exist in 1851; it was adopted as part of the Product Liability Act in 1978. *See Hoffman v. E.W. Bliss Co.,* 448 N.E.2d 277, 281 (Ind.1983) (noting that "the Indiana Legislature has codified the basic principles of § 402A products liability into law," including strict liability). It is true, as the dissent notes, that the concept of strict liability did not originate with the Product Liability Act. Although strict liability did not exist in 1851, by the 1970s, it had become a recognized theory of recovery. *See Ayr–Way Stores, Inc. v. Chitwood,* 261 Ind. 86, 92–93, 300 N.E.2d 335, 339–40 (1973); *Galbreath v. Engineering Construction Corp.,* 149 Ind.App. 347, 356–57, 273 N.E.2d 121, 126–27 (1971) (recognizing Indiana's adoption of absolute liability for manufacturers and adoption of

§ 402A of the Restatement of Torts). This further underscores the point that the common law was not frozen in 1851 and is not chiseled in stone today. The dissent would imply that any judicially created tort remedy, even if non-existent until over 100 years after the adoption of the Indiana Constitution, cannot be abolished. Under this view, the door swings only one way: causes of action may be created at common law and by statute, but no cause of action, once it is created, may be eliminated.

As we observed in another context, the power to create is the power to destroy. *See State v. Monfort,* 723 N.E.2d 407, 410 (Ind.2000). There is a fundamental difference between finding in the Indiana Constitution a requirement to preserve a specific substantive rule of law (which is the net effect of the dissent's position), and requiring that our courts be open to entertain claims based on established rules of law. The holding in *Martin v. Richey* is that a claim that exists cannot be barred before it is knowable. Here, we are dealing with a rule of law that says, in effect, that products that produce no injury for ten years are no longer subject to claims under the Product Liability Act. Whatever the wisdom of such a rule, in our view it is a matter well within the legislature's ability to regulate.

E. *The Statute Is A Rational Means of Achieving a Legitimate Legislative Goal*

■ Although we reject the McIntoshes' argument that the constitution precludes the General Assembly from modifying or eliminating a common law tort, the legislature's authority is not without limits. Section 12 requires that legislation that deprives a person of a complete tort remedy must be a rational means to achieve a legitimate legislative goal. As elaborated in *Johnson,* 273 Ind. at 396, 404 N.E.2d at 599, "[T]he limitation upon patient recoveries is not arbitrary and irrational, but furthers the public purposes of the Act...."

In *Martin*, we also found a requirement that, as applied to the individual case, the limitation must not be an unreasonable impediment to the exercise of an otherwise valid claim. This requirement is a variation on the substantive due process theme and imposes an overall test of rationality very similar to the requirement of a rational relationship under Section 23 discussed below.

The Product Liability Act meets both tests. The statute of repose represents a determination by the General Assembly that an injury occurring ten years after the product has been in use is not a legally cognizable "injury" that is to be remedied by the courts. This decision was based on its apparent conclusion that after a decade of use, product failures are "due to reasons not fairly laid at the manufacturer's door." *Estate of Shebel v. Yaskawa Elec. Am., Inc.*, 713 N.E.2d 275, 278 (Ind.1999). The statute also serves the public policy concerns of reliability and availability of evidence after long periods of time, and the ability of manufacturers to plan their affairs without the potential for unknown liability. *Id.* The statute of repose is rationally related to meeting these legitimate legislative goals. It provides certainty and finality with a bright line bar to liability ten years after a product's first use. It is also rationally related to the General Assembly's reasonable determination that, in the vast majority of cases, failure of products over ten years old is due to wear and tear or other causes not the fault of the manufacturer, and the substantial interests already identified warrant establishing a bright line after which no claim is created.

In sum, the McIntoshes do not have a vested interest in the state of the common law as it existed before the Product Liability Act was passed. The General Assembly has made the permissible legislative choice to limit product liability actions to the first ten years of a product's use. Accordingly, the McIntoshes' injuries, which occurred after the ten-year statute of repose ended, were not legally cognizable injuries for which a remedy exists and the statute of repose does not violate Section 12.

## II. Article I, Section 23

█ Article I, Section 23 provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." The McIntoshes argue that the statute creates an impermissible distinction between tort victims injured by products more than ten years old and those injured by products less than ten years old. They also argue that the statute impermissibly grants a privilege to manufacturers of durable goods that is not available to manufacturers of non-durable goods.[7] These two classifications are based on the same distinction: injury by a product in use for more than ten years.

It is worth observing at the outset that some forms of legislative "classification" by their terms identify the class of persons to whom the legislation applies, and impose burdens upon or grant benefits to those persons. The hypothetical statute the dissent describes, limiting educational opportunities to persons under thirty years of age, is of that sort. All citizens are either over thirty or they are not. Age is an inherent characteristic in the sense of "innate," and no one over thirty will ever again fall into the class of persons under thirty. The differentiation of persons based on innate characteristics such as age raises a host of issues not relevant here, most obviously federal equal protection considerations. Most "classifications," however, do not define a group of persons

---

7. Melroe responds that the McIntoshes do not have standing to raise an argument based on a privilege granted to some manufacturers but not others because they are not members of the nonprivileged class of manufacturers. Whether the McIntoshes have standing as non-manufacturers, they clearly have standing as injured persons. Because the two sets of classifications are based on the same distinction, standing as to the first is sufficient. Shifting the focus from the victim to the producer does not require a separate analysis.

by some innate characteristic. Rather, they attach consequences to specified sequences of events that could touch anyone. The Product Liability Act statute of repose is of that ilk.

■ In *Collins v. Day*, 644 N.E.2d 72, 80 (Ind.1994), this Court announced a two-part test for determining a statute's validity under Section 23. First, the disparate treatment must be reasonably related to inherent characteristics that distinguish the unequally treated classes and second, preferential treatment must be uniformly applicable and equally available to all similarly situated persons. *Id.*; *see also Martin v. Richey*, 711 N.E.2d 1273, 1280 (Ind. 1999) (quoting *Collins*). As explained in *Martin*, even if the statute is valid under the first prong of *Collins*, it may be invalid under the second prong if, as applied to a subset of a facially homogeneous class, it confers a different privilege or harm. 711 N.E.2d at 1281–82. Although *Collins* itself uses the word "inherent" to describe the characteristic that defines the class, this cannot be equated with "innate" characteristics of members of the class. The worker's compensation scheme, like the Product Liability Act, turns on the characteristics of the employers, not the injured workers. Similarly, under the Product Liability Act, everyone may potentially recover for an injury from a product not yet ten years old, and everyone injured from an older product is barred. It is the claim, not any innate characteristic of the person, that defines the class.

The first inquiry under Article I, Section 23 is whether the statute of repose is reasonably related to the inherent characteristics that define the distinction. In this case the distinction is the age of the product that allegedly injured the claimant. Contrary to the suggestion of the dissent, there is no statutory classification of claimants. Anyone can present a claim and anyone can be barred by the statute, depending on what product is the source of the claim. As explained in Part I, the statute of repose reflects the legislative determination that product failures occur-

ring more than ten years after delivery to the first user are not fairly laid at the door of the manufacturer. It also promotes certainty and finality by limiting the exposure of manufacturers to ten years after a product is first used. The distinction that follows between persons injured by products less than ten years old and those injured by products more than ten years old is rationally related to serving these legislative goals and is a permissible balancing of the competing interests involved. *See Collins*, 644 N.E.2d at 79–80 (citing *Johnson v. St. Vincent Hosp., Inc.*, 273 Ind. 374, 404–05, 404 N.E.2d 585, 604 (1980)) ("[T]he courts must accord considerable deference to the manner in which the legislature has balanced the competing interests involved.").

The dissent contends that the statute violates Article I, Section 23 because it classifies "people" arbitrarily, even if it classifies products rationally. This has a nice ring to it, but it proves far too much. Virtually every legislative classification is based on some measure other than the people whom the legislation affects. Worker's compensation grants benefits and confers immunities based on whether an accident occurs in the workplace or not. Surely under a host of precedents the entire worker's compensation scheme is not unconstitutional because it treats people differently even though they suffer the same injury. Yet this is the conclusion to which the dissent leads us. *See* 729 N.E.2d at 993 ("The parties who are injured by defective products more than ten years old do not necessarily differ from the parties who are injured by such products that are only nine years old."). Indeed, the very authority cited by the dissent as establishing this doctrine in fact rejects it. *Collins v. Day* held that the statutory exemption from worker's compensation coverage for agricultural employees does not violate Article I, Section 23 of the Indiana Constitution. *See* 644 N.E.2d at 81–82. Nonetheless, it is obvious that agricultural workers can incur injuries that, as the dissent puts it, "do not necessarily differ"

from those a worker might incur in another occupation, or in no occupation. *Collins* itself demonstrates this. The injury was a broken leg from an unspecified accident that occurred in the course of agricultural employment. No doubt many industrial accidents have produced identical results that were covered by worker's compensation benefits. The same is of course true of accidents in a number of other settings involving no employment relationship at all and therefore falling completely outside of the restraints and benefits of worker's compensation.

More broadly, the dissent contends that legislative classifications are to be invalidated under Article I, Section 23 if they permit remedies for some losses but not for other similar losses. This is a truly startling proposition. It would invalidate a host of regulatory statutes that hinge their jurisdiction on the characteristics of the supplier or the product and not on the impact on a consumer or other person coming into contact with a product. We have a statute prohibiting the unauthorized use of a watercraft as a plug to make a mold to duplicate the watercraft. *See* Ind.Code § 24–4–8–5 (1998). A civil treble damage remedy is provided by Indiana Code § 24–4–8–6(a)(3). The Cigarette Fair Trade Act, Ind.Code §§ 24–3–2–1 to 24–3–2–13, provides a number of remedies for economic injury in cigarette distribution that presumably could be incurred in any number of industries. The dissent would imply that these statutes, and presumably innumerable others, are unconstitutional because they apply only to watercraft or cigarettes, but the designer-manufacturer of, say, an aircraft, or the distributor of candy might suffer the same injury and have no compensable remedy.

The general business corporation law provides appraisal rights to dissenting shareholders who believe a merger does not adequately value their shares as long as the shares are not listed on a national exchange or traded on NASDAQ. *See* Ind.Code § 23–1–44–8 (1998). Similarly, the dissent would render this unconstitutional because the holder of a listed security could suffer the same injury and not be able to invoke this remedy. Yet these and similar statutory provisions have been upheld as reasonable exercises of legislative judgment based on the classification of the supplier. *See, e.g., Johnson,* 273 Ind. at 393, 397–99, 404 N.E.2d at 597, 600–01 (concluding that the medical malpractice statute does not violate Article I, Section 23, either by requiring malpractice claims to first be reviewed by a medical panel or by capping damages at $500,000); *Sidle v. Majors,* 264 Ind. 206, 210–11, 341 N.E.2d 763, 767 (1976) (upholding guest statute even though it results in "two classifications of passengers-guests and non-guests, who are treated vastly differently under circumstances that are otherwise identical"). *Cf. Indiana Farm Bureau Cooperative Ass'n v. Agmax, Inc.,* 622 N.E.2d 206, 211 (Ind.Ct.App.1993) (agricultural cooperatives are not entitled to dissenters' rights under Business Corporation Law because they are governed by the Indiana Agricultural Cooperative Act, which does not provide for these rights).

It is simply not the case, as the dissent puts it, that "inherent characteristics of the people" differentiate the statutory treatments. It is the characteristic, inherent or not, of the underlying products with which the "people" come into contact that produce the differentiated result. To take *Collins* as an example, an agricultural worker and an industrial worker have no inherent characteristics. The industry in which they are employed is the basis of the distinction. An analogous relationship is true of the cigarette distributors, watercraft manufacturers, and shareholders in listed companies.

Section 23 also requires that the preferential treatment provided by the statute of repose be uniformly applicable to all similarly situated persons. *Martin,* 711 N.E.2d at 1280; *Collins,* 644 N.E.2d at 80. As explained in *Martin,* this second prong is aimed at discovering whether the statute is unconstitutional as applied to the particular plaintiff. *See* 711 N.E.2d at 1281–82.

In this case, the statute of repose bars any claim for injury that occurs more than ten years after delivery to an initial user or consumer. Unlike the plaintiff in *Martin* who had an otherwise valid tort claim but was unable to discover it within the statute of limitations, the McIntoshes have never had a legally cognizable injury. On its face the statute applies to everyone. All citizens are prevented from accruing claims based on products in use longer than a decade. The McIntoshes belong to no subset of that class. They are treated no differently from any other person injured more than ten years after a product is first used or consumed.

The dissent asserts that deference to legislative judgment is required only as to whether the legislative action is reasonably related to the inherent characteristics of the deferential class. Without any citation to authority for this proposition, the dissent says the courts are to cut the legislature no slack in their judgment as to which characteristics justify different treatment. *See* 729 N.E.2d at 985–94. This claim swims upstream against a host of precedent. *See Indiana Dep't of Envtl. Management v. Chemical Waste Management, Inc.,* 643 N.E.2d 331, 338 (Ind.1994); *Johnson,* 273 Ind. at 391–92, 404 N.E.2d at 596–97; *Indiana Aeronautics Comm'n v. Ambassadair, Inc.,* 267 Ind. 137, 149, 368 N.E.2d 1340, 1347 (1977) ("We conclude that the great deference given to tax legislation and the classifications they may employ by the Fourteenth Amendment and Article I, Section 23 of the Indiana Constitution dictates that this statute is not constitutionally invalid. . . ."). Indeed, just last year, citing *Collins,* we reaffirmed as constitutional the legislative scheme distinguishing between medical malpractice claimants and non-medical malpractice claimants as reasonably related to the goal of maintaining adequate medical treatment and containing medical malpractice insurance costs. *See Martin,* 711 N.E.2d at 1280–81. Even the entire structure of state government has been justified on the basis of classification of cities and towns that are obviously arbitrary in the sense

that they draw lines at specified points along a spectrum. Yet these laws have been upheld under Article I, Section 23 and against other constitutional challenges. *See, e.g., Dortch v. Lugar,* 255 Ind. 545, 266 N.E.2d 25 (1971) (upholding as constitutional "Unigov" legislation reorganizing local municipal and county government for counties with cities of the first class, i.e., for Marion County).

Finally, *Collins v. Day* says, on this subject:

> Article I, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

644 N.E.2d at 80. This language contains no caveat that deference is due legislative judgments only as to the first of these. As we are often reminded, in constitutional interpretation we look to the understanding of the ratifiers. *See Richardson v. State,* 717 N.E.2d 32, 38 (Ind.1999); *Ratliff v. Cohn,* 693 N.E.2d 530, 534 (Ind.1998); *Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind.1996); *State v. Hoovler,* 668 N.E.2d 1229, 1233 (Ind.1996) ("In interpreting a particular provision of the Indiana Constitution, we seek 'the common understanding of both those who framed it and those who ratified it.'"); *Collins,* 644 N.E.2d at 75–76. We take this to mean that the actual language is important because it tells us how the voters who approved the Constitution understood it, whatever the expressed intent of the framers in debates or other clues. So, too, we take *Collins* at its word. Our reading of *Collins* on this point has been, so far as we can determine, universally adopted by the

courts citing that case. *See Cohn v. Strawhorn,* 721 N.E.2d 342, 350–51 (Ind. Ct.App.1999) ("Legislative classification becomes a judicial question only where the lines drawn appear arbitrary or manifestly unreasonable."); *Fleming v. International Pizza Supply Corp.,* 707 N.E.2d 1033, 1037–38 (Ind.Ct.App.1999) (same); *Person v. State,* 661 N.E.2d 587, 593 (Ind.Ct.App. 1996) (same) (all citing *Collins* for this proposition).

In sum, because the disparate treatment imposed by the statute of repose is reasonably related to the inherent characteristics of the class and does not distinguish among members of the class, the statute does not violate Article I, Section 23.

### Conclusion

The trial court's grant of summary judgment for Melroe is affirmed.

SHEPARD, C.J., concurs.

SULLIVAN, J., concurs in part and concurs in result with separate opinion.

DICKSON, J., dissents with separate opinion in which RUCKER, J., concurs.

SULLIVAN, Justice, concurring in part and concurring in result.

I agree that the ten-year statute of repose in the Indiana Product Liability Act does not violate either art. I, § 12, or art. I, § 23, of the Indiana Constitution.

In my view, the constitutionality of the Product Liability Act statute of repose under art. I, § 12, was established in *Dague v. Piper Aircraft Corp.,* 275 Ind. 520, 418 N.E.2d 207 (1981). While it is true that Chief Justice Shepard and Justice Dickson suggested in their dissents in *Covalt v. Carey Canada, Inc.,* 543 N.E.2d 382, 387–90 (Ind.1989), that *Dague* did not fully address the constitutionality of the statute of repose under section 12, we have subsequently cited *Dague* approvingly for precisely that proposition. *State v. Rendleman,* 603 N.E.2d 1333, 1336–37 (Ind.1992).

While the constitutionality of the Product Liability Act statute of repose under art. I, § 23, has not been squarely addressed, I find *Beecher v. White,* 447 N.E.2d 622, 627 (Ind.Ct.App.1983), *transfer denied,* to be precedent. *Beecher* upheld the constitutionality under art. I, § 23, of a ten-year statute of repose for claims arising from architectural deficiencies.

Although the *Dague* and *Beecher* precedents have not been explicitly overruled or disapproved, the question remains whether recent changes in our section 12 or section 23 jurisprudence would produce a different result today. Specifically, do our three decisions last year — *Martin v. Richey,* 711 N.E.2d 1273 (Ind.1999), and two related cases, *Harris v. Raymond,* 715 N.E.2d 388 (Ind.1999); *Van Dusen v. Stotts,* 712 N.E.2d 491 (Ind.1999) — holding the Medical Malpractice Act statute of limitations unconstitutional as applied require that the statute of repose be invalidated in this case?

> In *Martin,* we held that section 12 preclude[s] the application of a two-year medical malpractice statute of limitations when a plaintiff has no meaningful opportunity to file an otherwise valid tort claim within the specified statutory time period because, given the nature of the asserted malpractice and the resulting injury or medical condition, plaintiff is unable to discover that she has a cause of action. Stated another way, the medical malpractice statute of limitations is unconstitutional as applied when plaintiff did not know or, in the exercise of reasonable diligence, could not have discovered that she had sustained an injury as a result of malpractice, because in such a case the statute of limitations would impose an impossible condition on plaintiff's access to courts and ability to pursue an otherwise valid tort claim.

711 N.E.2d at 1284. *Martin* requires that the plaintiff have "an otherwise valid tort claim," as the foregoing quotation makes clear by twice repeating that expression. *Martin* also reiterates an important point made in *Rendleman* that "the legislature has the authority to modify or abrogate

common law rights provided that such change does not interfere with constitutional rights." *Martin,* 711 N.E.2d at 1283 (citing *Rendleman,* 603 N.E.2d at 1336). The legislature has established the product liability tort claim only for physical harm which occurs within ten years of the delivery of the product to the initial user or consumer. Ind.Code § 34–20–3–1(b) (1998). There is no valid product liability tort claim for physical harm which occurs outside that ten-year period. Because the harm allegedly suffered by McIntosh was outside the ten-year period, McIntosh did not have the "otherwise valid tort claim" required by *Martin.*

> As to section 23, *Martin*
>
> requires that the statute of limitations be "uniformly applicable" to all medical malpractice victims, and that, therefore, the statute could not be applied to preclude a plaintiff from filing a claim simply because she has a disease which has a long latency period and which may not manifest significant pain or debilitating symptoms until several years after the asserted misdiagnosis.

*Van Dusen,* 712 N.E.2d at 493. *Martin* clearly recognizes that section 23 allows the legislature to create a statute of limitations in the Medical Malpractice Act so long as it is uniformly applicable to all medical malpractice victims. From this I conclude that section 23 is no impediment to the legislature creating a statute of repose in the Product Liability Act so long as it is uniformly applicable to all products victims. That is the case here: there is no claim that McIntosh is treated any differently under the Product Liability Act than any other product victim whose injury occurs more than ten years after delivery of the product to an initial user or consumer.

Because I do not believe that either *Martin* or its companion cases altered the

established precedents of *Dague* and *Beecher,* I conclude that those precedents dictate that the Product Liability Act's statute of repose violates neither art. I, § 12, nor art. I, § 23, of the Indiana Constitution.

DICKSON, Justice, dissenting

This case presented us with an opportunity to restore to Indiana's jurisprudence important principles of our state constitution. By doing so, we could have vividly exemplified the Rule of Law notwithstanding the allure of pragmatic commercial interests. We should hold that the ten-year statute of repose provision in the Indiana Products Liability Act violates both the Right to Remedy and the Equal Privileges and Immunities Clauses of the Indiana Constitution.

### Right to Remedy Clause

Within the Bill of Rights of the Indiana Constitution, Section 12 provides in relevant part: All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law.[1] The majority today holds that the statute of repose in the Indiana Products Liability Act, which denies remedy to citizens injured by defective products that happen to be more than ten years old,[2] does not violate this provision. Noting prior cases that have considered the Due Course of Law Clause of the Indiana Constitution analogous to the Due Process of Law Clause of the U.S. Constitution, the majority correctly acknowledges that the two provisions are not synonymous, but nevertheless finds the statute of repose provision proper because it concludes that there is no constitutional right to remedy in Indiana. I disagree.

Our standard of review of state constitutional claims is well established. Proper interpretation and application of a particu-

---

1. The full provision states: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial;

speedily, and without delay." IND. CONST. art. I, § 12.

2. The time limit in the statute of repose is triggered, not by the actual age of the product, but by the date of delivery to the first user or consumer.

lar provision of the Indiana Constitution requires a search for the common understanding of both those who framed it and those who ratified it. *Collins v. Day,* 644 N.E.2d 72, 75–76 (Ind.1994); *Bayh v. Sonnenburg,* 573 N.E.2d 398, 412 (Ind.1991). Furthermore, "the intent of the framers of the Constitution is paramount in determining the meaning of a provision." *Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind.1996); *Eakin v. State ex rel. Capital Improvement Bd. of Managers of Marion County,* 474 N.E.2d 62, 64 (Ind.1985). In order to give life to their intended meaning, we "examin[e] the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." *Indiana Gaming Comm'n v. Moseley,* 643 N.E.2d 296, 298 (Ind.1994). *See also Price v. State,* 622 N.E.2d 954, 957 (Ind.1993); *State Election Bd. v. Bayh,* 521 N.E.2d 1313 (Ind.1988). In construing the constitution, we "look to the history of the times, and examine the state of things existing when the constitution or any part thereof was framed and adopted, to ascertain the old law, the mischief, and the remedy." *Sonnenburg,* 573 N.E.2d at 412 (citing *State v. Gibson,* 36 Ind. 389, 391 (1871)). The language of each provision of the Constitution must be treated with particular deference, "as though every word had been hammered into place." *Warren v. Indiana Tele. Co.,* 217 Ind. 93, 102, 26 N.E.2d 399, 403 (Ind.1940).

The framers emphatically declared, and the ratifiers approved, that "every person for injury done to him in his person, property, or reputation, *shall have remedy* by due course of law." IND. CONST. art. I,

§ 12 (emphasis added). In choosing the language of this provision, they did not say that every person might have whatever remedy the common law or the legislature may allow from time to time, nor did they merely reiterate the language of the then-existing federal Due Process Clause, which states that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. They did not craft Section 12 merely to provide "due process." Instead, our framers and ratifiers unequivocally enhanced the protections afforded by our state constitution, expressly establishing the additional right to remedy for injuries suffered.

Indiana first adopted a "remedy by due course of law" provision as part of its original Constitution in 1816.[3] This provision was retained with only slight modification (replacing "lands, goods" with "property") when our present Constitution was adopted in 1851. When Section 12 was adopted in 1851 (and when adopted in its initial form in 1816), the only source of federal due process protection was that provided in the Fifth Amendment, which did not contain a right to remedy clause and was not applicable to the states. From the time of the Declaration of Independence until after the Civil War, the rights and liberties of citizens were protected against government infringement only by the declarations of rights in the individual states. Justice Randy J. Holland, *State Constitutions: Purpose and Function,* 69 TEMPLE L.REV. 989, 998 (1996). The Fourteenth Amendment to the U.S. Constitution,[4] which includes the Due Process Clause that is applicable to the states, was not adopted until 1868, and

---

**3.** The provision read: "That all Courts shall be open, and every person, for an injury done him, in his lands, goods, person, or reputation shall have remedy by the due course of law; and right and justice administered without denial or delay." IND. CONST. art. I, § 11 (1816).

**4.** The Fourteenth Amendment, under which many of the due process protections were recognized and applied to the states, was

adopted more than ten years *after* our state constitution. It provides:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor

thus could not have served as the model for Article I, Section 12 of Indiana's 1851 Constitution.

When the framers of our constitution adopted Article I, Section 12, the primary definition of the term "remedy" was "[t]he means employed to enforce a right or redress an injury."[5]  2 BOUVIER'S LAW DICTIONARY 436 (14th ed. 1878).  Thus, the Right to Remedy Clause does not entitle a person to automatic reparation or recompense, but rather ensures access to the courts to *seek* reparation or recompense for wrongful injury.

Thirty-seven other state constitutions[6] also include a "remedies" provision.[7] These provisions trace their roots to chapter 40 of the Magna Carta: "To no one will we sell, to no one will we deny, or delay right or justice."[8]  It is this assurance of access to justice that is embodied in our Right to Remedy Clause.

---

deny any person within its jurisdiction the equal protection of the laws.
U.S. CONST. amend. XIV, § 1.

**5.** The term "remedy" continues to mean: "The means by which a right is enforced or the violation of a right is prevented, redressed, or compensated.  The means employed to enforce a right or redress an injury, as distinguished from right, which is a well founded or acknowledged claim."  BLACK'S LAW DICTIONARY 1294 (6th ed.1990) (citations omitted).  *See also* BALLENTINE'S LAW DICTIONARY 1088 (3d ed.  1969) ("The means employed to enforce a right or redress an injury.  The means or method whereby a cause of action or corresponding obligation is effectuated and by which a wrong is redressed and relief obtained.  The appropriate legal form of relief by which remediable right may be enforced.") (citations omitted); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (UNABRIDGED) 1920 (1966) ("the legal means to recover a right or to prevent or obtain redress for a wrong: the relief (as damages, restitution, specific performance, an injunction) that may be given by a court for a wrong"); WEST'S LEGAL THESAURUS/DICTIONARY 647 (1985) ("The means by which a right is enforced; the steps by which the violation of a right is prevented, redressed, or compensated. . . .").

**6.** The thirty-eight states with some version of a remedies provision include: ALA. CONST. art. I, § 13; ARIZ. CONST. art. 2, § 11; ARK. CONST. art. 2, § 13; COLO. CONST. art. II, § 6; CONN. CONST. art. 1, § 10; DEL. CONST. art. I, § 9; FLA. CONST. art. 1, § 21; GA. CONST. art. 1, § 1, ¶ 12; ILL. CONST. art. 1, § 12; IND. CONST. art. 1, § 12; KY. CONST.  Bill of Rights § 14; LA. CONST. art. 1, § 22; ME. CONST. art. 1, § 19; MD. CONST. art. 19; MASS. CONST. art. 11, pt. 1; MINN. CONST. art. 1, § 8; MISS. CONST. art. 3, § 24; MO. CONST. art. 1, § 14; MONT. CONST. art. II, § 16; NEB. CONST. art. I, § 13; N.H. CONST. art. 14, pt. 1; N.C. CONST. art. I, § 18; N.D. CONST. art. I, § 9; OHIO CONST. art. I, § 16; OKLA CONST. art. 2, § 6; OR. CONST. art. 1, § 10; PA CONST. art. 1, § 11; R.I. CONST. art. I, § 5; S.C. CONST. art. I, § 9; S.D. CONST. art. VI, § 20; TENN. CONST. art. 1, § 17; TEX. CONST art. 1, § 13; UTAH CONST. art. 1, § 11; VT. CONST.  Ch. I, art. 4; WASH. CONST. art 1, § 10; W. VA. CONST. art. 3, § 17; WIS. CONST. art. 1,  § 9; WYO. CONST. art. 1, § 8. *See generally* John H. Bauman, *Remedies Provisions in State Constitutions and the Proper Role of the State Courts,* 26 WAKE FOREST L.REV. 237, 284–88 (1991) (collecting state constitutional remedies provisions).

**7.** Although several of these state constitutions do not include "due course" language in their remedies provisions, the primary objective of these provisions is to guarantee access to courts to seek remedy.  In several state constitutions, "remedy" is modified to describe the quantity, quality, or timeliness of the remedy. *See, e.g.,* ARK. CONST. art 2, § 13 ("certain remedy"); COLO. CONST. art. II, § 6 ("speedy remedy"); ILL. CONST. art I, § 12 ("certain remedy"); LA. CONST. art. 1, § 22 ("adequate remedy"); MASS. CONST. art. 11, pt. 1 ("certain remedy"); MINN. CONST. art. 1, § 8 ("certain remedy"); MO. CONST. art. 1, § 14 ("certain remedy"); MONT. CONST. art. II, § 16 ("speedy remedy"); N.H. CONST. art. 14, pt. 1 ("certain remedy"); OKLA. CONST. art. 2, § 6 ("speedy and certain remedy"); R.I. CONST. art. I, § 5 ("certain remedy"); S.C. CONST. art. I, § 9 ("speedy remedy"); VT. CONST. Ch. I, art. 4 ("certain remedy"); WIS. CONST. art. 1, § 9 ("certain remedy").

**8.** This clause of the Magna Carta is the source of the action for trespass on the case, as embodied in the statute of Westminster II. The last section of that statute, chapter 50 provided: "(2) Moreover, concerning the statutes provided where the Law faileth; and for Remedies, lest suitors coming to the King's court should depart from thence without Remedy, they shall have writs provided in their cases."  13 Edw. 1, c. 24, *cited in* Donna B. Haas Powers, *State Constitutions' Remedy Guarantee Provisions Provide More Than Mere "Lip Service" to Rendering Justice,* 16 TOLEDO L.REV. 585, 585 n. 3 (1985).

The right to remedy for injury has long been important in Indiana and our nation. Although the historical records from the 1816 and 1851 conventions provide no direct evidence of the intent of the framers regarding this clause, this Court declared within the first decade following the adoption of our present Right to Remedy Clause: " 'No one,' says Judge Story, 'will doubt that the Legislature may vary the nature and extent of remedies, so always that a substantial remedy exists.' " *Maynes v. Moore*, 16 Ind. 116, 122 (Ind. 1861) (quoting Story's Com. § 1379). Later, this Court reiterated the importance of remedy: "It has always been a general principle under our legal system that for every wrong there should be a remedy." *State ex rel. Reichert v. Youngblood*, 225 Ind. 129, 142, 73 N.E.2d 174, 179 (Ind. 1947). Chief Justice of the United States John Marshall also stated: "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60, 69 (1803).

Applying our well-established methodology of constitutional interpretation, I conclude that Section 12 provides separate and distinct protections and is not coextensive with federal due process jurisprudence. I am also convinced that Section 12 ensures not only that procedures must comply with due course of law, but further that both the text and the history provide strong support for understanding Section 12 of Indiana's Bill of Rights to provide a substantive right to remedy for injuries suffered.

The legislature has the authority to modify or abrogate common law rights as long as such change does not interfere with constitutional rights.[9] *Martin v. Richey*, 711 N.E.2d 1273, 1283 (Ind.1999); *State v. Rendleman*, 603 N.E.2d 1333, 1336 (Ind.1992). Although constitutional rights may be subjected to legislative restraints and burdens necessitated by the State's exercise of its police power to promote the peace, safety, and well-being of the public, this police power is not unlimited: "[T]here is within each provision of our Bill of Rights a cluster of essential values which the legislature may qualify but not alienate." *Price v. State*, 622 N.E.2d 954, 960 (Ind.1993). "A right is impermissibly alienated when the State materially burdens one of the core values which it em-

9. In asserting that the General Assembly may modify or abrogate the common law and that some common law remedies have been abolished by the legislature without conflict with the Indiana Constitution, the majority places substantial reliance on *Pennington v. Stewart*, 212 Ind. 553, 10 N.E.2d 619 (1937), and *Sidle v. Majors*, 264 Ind. 206, 341 N.E.2d 763 (1976). In *Pennington*, however, this Court upheld the legislation abolishing alienation of affections because the husband did not have a property right to the affections of his wife, because a wife was no longer the "property" of her husband in the eyes of the law, and because the marital relation was subject to the control of the legislature. *Id.* at 556–59, 10 N.E.2d at 621–22. Thus, the statute did not abrogate a remedy for injury to "person, *property,* or reputation" as protected by Section 12. In *Sidle*, this Court, while upholding legislation burdening, but not abrogating, a motor vehicle passenger's legal recourse for the injuries caused by the driver, expressly acknowledged:

"[Article I, Section 12] embraces the principle of natural justice that in a free government every man should have an adequate legal remedy for injury done him by another.

The inquiry, in every case, must be directed to the nature of the right alleged to have been infringed upon. Undoubtedly, arbitrary and unreasonable abolishment of a right of action to redress injury to the essential rights of person or property is prohibited. Certainly, the legislature may not ... abolish a remedy given by the common law to essential rights without affording another remedy substantially adequate."

*Sidle*, 264 Ind. at 223, 341 N.E.2d at 773–74 (quoting *Gallegher v. Davis*, 183 A. 620, 624 (Del.Super.Ct.1936)). To the extent that these and other cases may be read to provide some support for the legislative authority to completely abrogate common law remedies, they fail to adhere to the intended principles of Section 12 and should be superseded.

bodies." *Id.* The right to remedy for injury is such a core value.

While legislative qualifications of this right may be enacted under the police power, the total abrogation of an injured person's right to remedy is an unacceptable material burden.[10] The statute of repose provision in the Products Liability Act is no mere qualification. It does not merely limit the time within which to assert a remedy, nor does it merely modify the procedure for enforcing the remedy. Nor is it a narrow, limited immunity necessitated by police power. On the contrary, the repose provision completely bars the courthouse doors to all persons injured by products over ten years old, even for claims alleging negligence, and even where the products were designed, built, sold, and purchased with the expectation of decades of continued use.[11] Although this

---

10. In asserting that this Court's decision in *Martin v. Richey* does not affect its analysis, the majority distinguishes this case and our decision in *Martin*, stating that *Martin* held that "a claim that exists cannot be barred before it is knowable," whereas here a "rule of law ... says, in effect, that products that produce no injury for ten years are no longer subject to claims under the Product Liability Act." Op. at 979. This strips *Martin* of its rationale and restricts it to the narrowest possible holding.

In *Martin*, we held that the Medical Malpractice Act's statute of limitations, as applied, was unconstitutional under Article I, Section 12 of our Constitution "because it requires plaintiff to file a claim before she is able to discover the alleged malpractice and her resulting injury, and, therefore, it imposes an impossible condition on her access to the courts and pursuit of her tort remedy." *Martin*, 711 N.E.2d at 1279. We concluded that it was "so unreasonable" for the statute of limitation to "require [the plaintiff] to file a claim before such claim existed" that it "violate[d] Section 12." *Id.* at 1285. Similarly, in the present case, the statute of repose required the plaintiffs to file a claim before they were able to discover the allegedly negligent conduct and the resulting injury, and thus before such claim existed, in order for them to receive a remedy for the injuries caused by the product. The statute of repose, therefore, imposes an impossible condition on their access to the courts to pursue their remedy, an otherwise valid tort claim. This too is unreasonable.

Building upon its distinction between *Martin* and this case, the majority reasons that the legislature may extinguish a cause of action before a plaintiff's claim accrues and thereby deprive a person of a remedy, as long as the legislation is a rational means to achieve a legitimate legislative goal. If the majority is correct on this point, the legislature, upon establishing a legitimate legislative goal, could extinguish, for example, medical malpractice causes of action (before any plaintiff's claim accrues) as long as that legislation is a rational means to achieve that legitimate

legislative goal. Under such legislation, no party injured by a negligent doctor would ever have a valid claim of medical malpractice, because no claim would accrue.

> We long ago rejected such reasoning:
> To construe the medical malpractice statute as a legislative bar on all malpractice actions under all circumstances unless commenced within two years from the act complained of (discoverable or otherwise) would raise substantial questions under the Article 1, § 12 guarantee of open courts and redress for injury to every man, not to mention the offense to lay concepts of justice.

(*Chaffin v. Nicosia*, 261 Ind. 698, 703–04, 310 N.E.2d 867, 870 (1974)). *Martin* demonstrated the Court's continued recognition of these concerns expressed in *Chaffin*. *Martin*, 711 N.E.2d at 1283 (quoting *Chaffin*). Like the Court in *Martin* and *Chaffin*, I believe that the statute of repose violates Article 1, Section 12 by precluding all product liability actions unless commenced within ten years of delivery to the initial user.

11. The majority asserts that strict liability for product flaws did not exist in 1851 but was adopted as part of the Product Liability Act in 1978. It is important to note that the Product Liability Act was not the beginning of claims brought by parties injured by products. The plaintiffs persuasively argue that the statute of repose abrogates legal protections and remedies that have been available to persons injured by products for more than six hundred years of Anglo–American law. Here in Indiana, the same legal protections and remedies were afforded persons injured by products, until the statute of repose was adopted. *See, e.g., J.I. Case Co. v. Sandefur*, 245 Ind. 213, 197 N.E.2d 519 (1964); *Travis v. Rochester Bridge Co.*, 188 Ind. 79, 122 N.E. 1 (1919); *Coca Cola Bottling Works v. Williams*, 111 Ind.App. 502, 37 N.E.2d 702 (1941); *Holland Furnace Co. v. Nauracaj*, 105 Ind.App. 574, 14 N.E.2d 339 (1938); *Moorman Mfg. Co. v. Keller*, 98 Ind.App. 607, 184 N.E. 913 (1933); *Laudeman v. Russell & Co.*, 46 Ind.

provision denies all Indiana citizens access to justice ensured by the Right to Remedy Clause, it is especially pernicious to those economically disadvantaged citizens who must rely on older or used products rather than new ones.

I would find that the Products Liability Act repose provision, Indiana Code section 34–20–3–1(b), violates our Right to Remedy Clause, Article I, Section 12 of the Indiana Constitution.

## Equal Privileges and Immunities

Section 23 of the Bill of Rights of the Indiana Constitution declares: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." IND. CONST. art. I, § 23. In *Collins v. Day*, 644 N.E.2d 72 (Ind.1994), this Court conducted a comprehensive analysis of the common understanding of the framers and ratifiers of Section 23 and the early decisions interpreting and implementing this provision. We concluded:

> To summarize, we hold that Article I, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

App. 32, 91 N.E. 822 (1910). Furthermore, over a quarter of a century ago, our common law advanced to permit such claims on a theory of strict liability in tort. *See Ayr–Way Stores, Inc. v. Chitwood*, 261 Ind. 86, 92–93, 300 N.E.2d 335, 339–40 (Ind.1973) (adopting RESTATEMENT (SECOND) OF TORTS § 402A, providing for strict liability in product liability action). *See also Galbreath v. Eng'g Constr. Corp.*, 149 Ind.App. 347, 273 N.E.2d 121 (1971); *Perfection Paint & Color Co. v. Konduris*, 147 Ind.App. 106, 258 N.E.2d 681 (1970); *Cornette v. Searjeant Metal Products, Inc.*, 147 Ind.App. 46, 258 N.E.2d 652 (1970). With the enactment of the Product Liability Act, the legislature initially entered the field of product strict liability in tort, but the legislature did not supersede claims against negligent manufacturers in product negligence liability cases. *See Koske v. Townsend Eng'g Co.*, 551 N.E.2d 437, 442–43 (Ind.1990).

The 1978 Product Liability Act contained a statute of repose provision, requiring any product liability action to be commenced within ten years after the delivery of the product to the initial user or consumer. Pub.L. No. 141–1978, § 28 (codified at IND.CODE § 33–1–1.5–5) (current version at IND.CODE § 34–20–3–1). This provision was amended in 1983, thereby requiring any product liability action "in which the theory of liability is negligence or strict liability in tort" to be commenced within ten years after the delivery of the product to the initial user or consumer. Pub.L. No. 297–1983, § 6 (codified at IND.CODE § 33–1–1.5–5) (current version at IND.CODE § 34–20–3–1). In 1995, the statute was amended again, requiring "all actions brought by a user or consumer against a manufacturer or seller for physical harm caused by a product regardless of the substantive legal theory or theories upon which the action is brought." Pub.L. No. 278–1995, § 1 (codified at IND.CODE § 33–1–1.5–1) (current version at IND.CODE § 34–20–1–1). In 1998, the legislature amended the Product Liability Act again, making this statute applicable to "all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." Pub.L. No. 1–1998, § 15 (codified at IND.CODE § 34–20–1–1). The ten-year statute of repose provision governs "in any product liability action in which the theory of liability is negligence or strict liability in tort." Pub.L. No. 1–1998, § 15 (codified at IND.CODE § 34–20–3–1).

As this statute has evolved, it has engulfed all common law tort claims previously available to those seeking remedy for injuries resulting from dangerous and defective products. In guaranteeing a substantive right to remedy for injuries suffered, our Constitution does not necessarily ensure the right to seek recovery under a theory of strict liability, but it certainly must embrace the principle that every person should have a reasonably adequate legal remedy for injury wrongfully done him by another.

*Collins*, 644 N.E.2d at 80. As we explained in *Collins*, the first requirement actually consists of two sub-elements: (1) "such classification must be based upon distinctive, inherent characteristics which rationally distinguish the unequally treated class;"[12] and (2) "the disparate treatment accorded by the legislation must be reasonably related to such distinguishing characteristics."[13] 644 N.E.2d at 79.

The Products Liability Act's repose provision states that "a product liability action must be commenced ... within ten years after the delivery of the product to the initial user or consumer."[14] IND.CODE § 34–20–3–1(b). The statute, on its face, distinguishes two classes of persons for unequal treatment: a user or consumer injured within ten years after the delivery of the product, and a user or consumer injured more than ten years after the delivery of the product. By artificially distinguishing as a separate class those citizens injured by defective products more than ten years old, and by forbidding them access to legal recourse for their injuries, this statute violates the Equal Privileges and Immunities Clause, Section 23 of the Bill of Rights of the Indiana Constitution. Thus, the first of the two *Collins* requirements compels our rejection of the ten-year repose provision.

I believe that the majority's misapplication of *Collins* begins with its focus upon

---

12. In *Collins*, this Court faced a claim that Section 23 was violated by the unequal treatment of two classifications: (1) agricultural employers in contrast to agricultural employees; and (2) agricultural employers in contrast to employers generally. We acknowledge that certain language employed in *Collins* was imprecise and may be read to suggest that we applied legislative deference to determine whether there were inherent distinctions between the classifications. *Id.*, 644 N.E.2d at 81 ("Applying the required deferential standard of review, we find that there are inherent distinctions between these classifications that are reasonably related to the exemption."). When reviewed in the full context of the discussion, however, it becomes apparent that the focus of our legislative deference in *Collins* was not on sub-element (1), the classification into groups naturally distinguished by inherent distinctions, but rather on sub-element (2), the reasonable relation of the disparate treatment to the distinguishing characteristics.

13. Citing *Martin*, 711 N.E.2d at 1281–82, the majority explains that, "even if the statute is valid under the first prong of *Collins*, it may be invalid under the second prong if, as applied to a subset of a facially homogenous class, it confers a different privilege or harm." Op. at 981. *Martin* instructed that, under the second prong, a statute that provides preferential treatment may be invalid when, on the face of the statute, the preferential treatment is not uniformly applicable and equally available to all persons similarly situated or when, as applied to particular plaintiffs, the preferential treatment is not uniformly applicable and equally available. *See Martin*, 711 N.E.2d at 1280–82.

Furthermore, in *Martin*, we applied Article I, Section 23 of the Indiana Constitution and held that the plaintiff "cannot be foreclosed from bringing her malpractice suit when, unlike many other medical malpractice plaintiffs, she could not reasonably be expected to discover the asserted malpractice and resulting injury within the two-year period given the nature of the asserted malpractice and her medical condition." *Id.* at 1282. As we explained, "Simply put, the statute precludes Melody Martin from pursuing a claim against her doctor because she has a disease which has a long latency period and which may not manifest significant pain or symptoms until several years after the asserted malpractice." *Id.* at 1279. Likewise, in the present case, the statute precludes the plaintiffs from pursuing a claim against the manufacturer because the product did not manifest its alleged design defects until John McIntosh was injured some thirteen years after the manufacturer's allegedly negligent conduct, which happened to fall outside the ten-year statutory period. James and Sondra McIntosh should not be foreclosed from bringing their product liability action in this case when, unlike many other plaintiffs injured by defective products, they could not reasonably be expected to discover the negligent design and manufacture within the ten-year period given the fact that the injuries did not occur until after the period expired.

14. It further provides that "if the cause of action accrues at least eight years but less than ten years after that initial delivery, the action may be commenced at any time within two years after the cause of action accrues." IND.CODE § 34–20–3–1(b).

unequal treatment of different classes of *products,* rather than upon unequally treated classes of *people.* When a statute is challenged as violating Section 23, we must evaluate the disparate treatment afforded to the benefited or burdened class.[15] Products are not sued; they do not receive immunity from suit under the statute; and thus, they receive neither a benefit nor a burden. It is *people* who receive unequal treatment under the statute.

Perhaps because it focuses upon products rather than people, the majority bypasses the required threshold question as to whether the legislative classification is based upon distinctive, inherent characteristics that rationally distinguish the unequally treated classes. This is sub-element (1) of the first of the two *Collins* requirements. The majority fails to consider this prerequisite question. It is only when the classification is based upon inherent distinctions that the analysis can proceed to evaluate whether the disparate treatment is reasonably related to the characteristics distinguishing the classifications.

Despite the legislature's acknowledged power to properly classify in order to legislate effectively, the Indiana Constitution demands more than simply a rational relationship between the legislative goal and the classification. While we generally do not question the legislature in its policy-making role, " '[l]egislative classification becomes a judicial question ... where the lines drawn appear arbitrary or manifestly unreasonable.' " *Collins,* 644 N.E.2d at 80 (quoting *Chaffin,* 261 Ind. at 701, 310 N.E.2d at 869). A classification "must furnish a reason for and justify the making of the class; that is, the reason for the classification must inhere in the subject-matter, and rest upon some reason which is natural and substantial, and not artificial." *Bedford Quarries Co. v. Bough,* 168 Ind.

671, 674, 80 N.E. 529, 529 (1907). Similarly, we have explained:

[W]hile some classification of the subjects of legislative action is necessary, and a reasonable classification based upon *actual differences which inhere in the different subjects* and embrace all within the class and the reason for the classification will be upheld, a classification, to be valid, *must be based on substantial distinctions which make one class so different from another as to suggest the necessity for different legislation with respect thereto.* An artificial, arbitrary, and unreasonable classification, *as by designating certain individuals by name or description out of a larger number whose situation and needs do not differ from theirs,* is forbidden by the constitution.

*Davis Constr. Co. v. Board of Comm'rs,* 192 Ind. 144, 150, 132 N.E. 629, 631 (1921) (emphasis added). *See also Sperry & Hutchinson Co. v. State,* 188 Ind. 173, 181, 122 N.E. 584, 587 (1919); *Railroad Comm'n of Ind. v. Grand Trunk W. R. Co.,* 179 Ind. 255, 262, 100 N.E. 852, 854 (1913); *Bedford Quarries,* 168 Ind. at 674, 80 N.E. at 529–30. It is not sufficient simply to identify the characteristics of the members of the group that will receive the benefit:

The law requires something more than a mere designation of characteristics which will serve to divide into groups. *Arbitrary selection or mere identification cannot be justified by calling it classification.* The characteristics which can serve as a basis of a valid classification must be such as to show *an inherent difference in situation* and subject-matter of the subjects placed in different classes *which peculiarly requires and necessitates different or exclusive legislation* with respect to them.

---

**15.** Section 23 applies to both statutes that create a privilege and those that impose a burden. "[I]mplicit in an enactment that imposes an unequal burden is the grant of a special privilege or immunity to persons or classes exempted from the new burden." *Collins,* 644 N.E.2d at 77.

... The Legislature cannot take what might be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered factions of the original unit as two classes, and thereupon enact different rules for the government of each.

*Fountain Park Co. v. Hensler,* 199 Ind. 95, 101–03, 155 N.E. 465, 467 (1927) (emphasis added) (citations omitted). Thus, a legislative classification violates Section 23 when it is not based upon substantial distinctions that make one class so different from another as to necessitate different legislation with respect thereto or when it simply designates certain individuals by name or description out of a larger number whose situation and needs do not differ.

The unequal treatment provided by the repose provision of the Products Liability Act is wholly unrelated to any distinctive, inherent characteristics that rationally distinguish the unequally treated classes of people. In other words, there is nothing that naturally inheres in the group of people designated for unequal treatment that separates them into distinctive classes. The *parties* who are injured by defective products more than ten years old do not necessarily differ from the *parties* who are injured by such products that are only nine years old. The ten-year product age line does not distinguish classes of people based upon their inherent characteristics. Using such a line as a basis to treat unequally different classes of people clearly violates both the language and the spirit of Section 23.[16] We have said before, "There is no more jealously guarded principle of constitutional law than that which forbids class legislation." *Dep't of Public Welfare of Allen County v. Potthoff,* 220 Ind. 574, 583, 44 N.E.2d 494, 497 (1942).

One further point is significant. Although *Collins* notes that courts evaluating a Section 23 claim must exercise deference to legislative discretion, such deference is relevant only to sub-element (2), not sub-element (1), of the first requirement of the *Collins* test.[17] Consideration of legislative goals and purposes is appropriate when determining sub-element (2), whether the disparate treatment is reasonably related to the distinguishing characteristics of each class. But it is not germane to the initial judicial evaluation under sub-element (1), whether sufficient distinctive, inherent characteristics exist that rationally justify the creation of separate classes of people for unequal treatment. Because it is this first sub-element that is violated by the repose provision, the issue of the reasonableness of the relationship between the distinguishing characteristics and the

**16.** To support its conclusion, the majority argues that the statute of repose, "on its face," applies to everyone, that all citizens are prevented from accruing claims based on products in use longer than a decade, and that the plaintiffs belong to no subset of that class. It is important to the majority that the plaintiffs are treated no differently from other people injured by a product more than ten years after it is first used or consumed.

The fallacy of this argument is apparent if we consider a claim arising under a hypothetical rule declaring, "State universities may only admit students under the age of thirty years." Stated differently, this rule permits only persons under the age of thirty to begin their studies at a state university. Under the majority's construction, the same rule applies to everyone—no one over the age of thirty can begin a state university education. If a prospective student begins when under thirty years of age, there would be no bar. But, if a prospective student attempts to begin when

over thirty years of age, there would be a bar. Nevertheless, the majority would conclude that no violation of our Equal Privileges Clause has occurred. What is clear, however, is that, under this general law, which applies to everyone, a class within the population (those who are over the age of thirty) is prevented from taking advantage of the privilege. Such is the case with the repose provision.

**17.** The dissent does not share the majority's apprehension that allowing judicial evaluation of inherent characteristics providing the basis for unequal treatment would invalidate a host of statutes in which legislative classifications permit remedies for some losses but not for others. The scenarios the majority sets forth are ones in which it would appear that the classification of people may well be based upon inherent differences and thus that the disparate treatment accorded these classifications would be entitled to reasonable deference to legislative discretion.

legislature's unequal treatment does not arise.

When this Court in *Collins* reviewed the history of Section 23, synthesizing history and case law, we intended that its protections apply "fully, equally, and without diminution to prohibit any and all improper grants of unequal privileges or immunities." 644 N.E.2d at 80. Our expectation was, and should still be, "that our independent state privileges and immunities jurisprudence will evolve in future cases facing Indiana courts to assure and extend protection to all Indiana citizens...." *Id.* at 81.

Indiana Code section 34–20–3–1(b) takes a natural class of persons (users or consumers of a product), splits that class in two, designates the dissevered factions of the original unit as two classes (persons injured by a product within ten years of its delivery and persons injured by products more than ten years after its delivery), and enacts different rules unequally governing each. Such discrimination is unconstitutional. *See Fountain Park Co.*, 199 Ind. at 101–03, 155 N.E. at 467. I would find that the Products Liability Act repose provision, Indiana Code section 34–20–3–1(b), violates the Equal Privileges and Immunities Clause, Article I, Section 23 of the Indiana Constitution.

### Conclusion

The Indiana Constitution guarantees that injured citizens have the right to remedy, and it prohibits the legislature from dividing people into unequally treated classes that are not based on inherent, natural distinctions. All people should have equal access to seek remedy for injuries they suffer, and those responsible should be held accountable. The interests of justice demand nothing less. This Court should hold that the repose provision violates the Indiana Constitution.

RUCKER, J., concurs.