**William ROBERTS, Jr., Appellant,**

v.

**ACandS, INC., Appellee.**

**No. 93A02–0309–EX–783.**

Court of Appeals of Indiana.

April 6, 2004.

Linda George, W. Russell Sipes, Laudig George Rutherford & Sipes, Indianapolis, IN, Attorneys for Appellant.

Sharon Funcheon Murphy, Lewis & Wagner, Indianapolis, IN, Attorney for Appellee.

**OPINION**

SULLIVAN, Judge.

William Roberts, Jr. appeals from an order of the Full Worker's Compensation

Board of Indiana ("the Board") dismissing his claim against his former employer, ACandS, Inc., for worker's compensation benefits. Roberts presents two issues for our review: whether the Board's dismissal of Roberts's worker's compensation claim pursuant to Ind.Code § 22–3–7–36(b) (Burns Code Ed. Repl.1997) was premature, and in the alternative, whether I.C. § 22–3–7–36 is unconstitutional as applied. Because we conclude that the dismissal of Roberts's claim was premature, we do not address his constitutional arguments.

We reverse and remand.

Roberts was a union insulator from 1957 through his retirement in 1994. During his over twenty-five years of employment with ACandS, Roberts worked on a multitude of jobs installing, handling, removing, or otherwise working directly with asbestos-containing insulation products. As a result, Roberts developed terminal malignant peritoneal mesothelioma, a disease most often associated with exposure to asbestos. Roberts was diagnosed with the disease in July 2001.

On August 1, 2001, Roberts and his wife, Beverly, filed a civil suit for damages in Marion County Superior Court against a number of defendants whom they alleged contributed to Roberts's disease. On November 10, 2001, Roberts filed with the Board an Application for Adjustment of Claim ("Application") against ACandS. There is nothing in the record, however, which indicates that Roberts ever sought or received worker's compensation benefits pursuant to his Application. Roberts did, however, pursue his third party action.

Prior to a jury trial upon his complaint, Roberts accepted payment pursuant to several settlement agreements which he had reached with one or more defendants whom he had named in the civil action. The total amount of these settlements exceeded $3,800,000. On May 24, 2002, a jury returned a verdict assessing damages for Roberts in the amount of $2,800,000 and damages for Beverly in the amount of $1,000,000. When the verdict was returned, four defendants and numerous nonparties, including ACandS, remained in the action. The jury apportioned 12% fault against Roberts, 13% fault against PSI Energy, Inc.,[1] 36% fault against ACandS, and a total of 39% fault against various other nonparties. The trial court entered a judgment upon the verdict.[2] However, there is nothing in the record which indicates that the judgment has been paid and accepted or even tendered.

On August 1, 2002, ACandS filed a motion to dismiss Roberts's worker's compensation Application. On March 6, 2003, a single hearing member of the Board issued an order dismissing Roberts's Application. Finding that the facts were not in dispute, the single hearing member concluded that, because Roberts had settled with one or more third parties, pursuant to I.C. § 22–3–7–36, ACandS had no further liability to compensate Roberts for his occupational disease. Roberts sought review of the single hearing member's decision by the full Board, and a hearing was subsequently held on June 24, 2003. On July 28, 2003, the full Board adopted and affirmed the single hearing member's decision dismiss-

---

1. PSI Energy, Inc. was one of the four remaining defendants. The jury found in favor of Central Soya Company, Inc., Eli Lilly & Company, and The Kroger Company, the other named defendants who remained in the action.

2. Following the trial court's entry of judgment upon the verdict, PSI Energy, Inc. appealed to this court seeking reversal of the judgment in favor of the Robertses. *See PSI Energy, Inc. v. Roberts*, 802 N.E.2d 468 (Ind. Ct.App.2004) (affirming the judgment), *trans. pending.*

ing Roberts's Application. Roberts now appeals.

■ The present case involves interpretation of a statute found within the Occupational Diseases Act ("ODA"), an act which is part of the worker's compensation scheme. More than twenty years after introduction of the Worker's Compensation Act ("WCA"), our General Assembly enacted the ODA, Ind.Code 22–3–7, in order to protect employees by providing compensation, without regard to fault, for those who contracted occupational diseases which were generally not covered under the WCA. *Spaulding v. Int'l Bakers Servs., Inc.,* 550 N.E.2d 307, 309 (Ind. 1990); *Duvall v. ICI Americas, Inc.,* 621 N.E.2d 1122, 1126–27 (Ind.Ct.App.1993). By authorizing compensation for certain diseases not caused by an employer's negligence, the ODA created new rights and remedies previously unrecognized by our common law. *Baker v. Westinghouse Elec. Corp.,* 637 N.E.2d 1271, 1275 (Ind. 1994). As with interpretation of provisions of the WCA, the provisions of the ODA should be liberally construed in favor of the employee to effectuate its humane purpose. *Id.* Further, where, as here, the facts are not in dispute and the matter for our review is primarily a legal question, we do not grant the same degree of deference to the Board's decision as we would if the issue were of fact, because law is the province of the judiciary and our constitutional system empowers the courts to draw legal conclusions. *See Walker v. Muscatatuck State Dev. Ctr.,* 694 N.E.2d 258, 266 (Ind. 1998).

The ODA provides the exclusive remedy for an employee against his employer when the employee develops an occupational disease.[3] *See* Ind.Code § 22–3–7–6 (Burns Code Ed. Repl.1997). It has been observed, however, that in enacting the WCA, the legislature "never intended to abridge the remedies an employee has in tort against a third party." *Ross v. Schubert,* 180 Ind.App. 402, 407, 388 N.E.2d 623, 627 (1979). The same holds true for the ODA. Indeed, the ODA provides:

> "Whenever disablement or death from an occupational disease arising out of and in the course of the employment for which compensation is payable under this chapter, shall have been sustained under circumstances creating in some other person than the employer and not in the same employ a legal liability to pay damages in respect thereto, *the injured employee ... may commence legal proceedings against such other person to recover damages notwithstanding such employer's or such employer's occupational disease insurance carrier's payment of, or liability to pay, compensation under this chapter.*" I.C. § 22–3–7–36(a) (emphasis supplied).

While the ODA permits employees to seek worker's compensation benefits as well as seek recovery from third parties, it also contains provisions to further the general policy prohibiting an employee from obtaining a "double recovery" for his injury. *Cf. Waldridge v. Futurex Industries, Inc.,* 714 N.E.2d 783, 786 (Ind.Ct.App.1999) (discussing the policy based upon nearly

---

**3.** Under the ODA, "occupational disease" is defined as "a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident of an occupational disease...." Ind.Code § 22–3–7–10 (Burns Code Ed. Repl.1997). In the present case, ACandS does not dispute that Roberts suffers from an occupational disease within the meaning of the statute. For simplicity's sake, we will refer to Roberts's occupational disease and occupational diseases generally as an "injury."

identical language under the WCA), *trans. denied.* Under the ODA, this policy is fostered in part by the subrogation provision found in I.C. § 22–3–7–36(a) and in the limitation on an employer's liability which is found in I.C. § 22–3–7–36(b).[4]

Upon appeal, Roberts maintains that the Board improperly interpreted I.C. § 22–3–7–36(b) and thus, he claims that dismissal of his Application was premature.[5] That statute provides:

> "*In the event such employee,*[6] ... not having received compensation or medical, surgical, hospital, or nurse's services and supplies or death benefits, ... *shall procure a judgment against such other party* for disablement or death from an occupational disease arising out of and in the course of the employment, *which judgment is paid, or if settlement is made with such other person, either with or without suit, then the employer or such employer's occupational disease insurance carrier shall have no liability* for payment of compensation or for payment of medical, surgical, hospital, or nurse's services and supplies or death benefits whatsoever...." I.C. § 22–3–7–36(b) (emphasis supplied).

Specifically, Roberts contends that I.C. § 22–3–7–36(b) does not operate to bar his claim against ACandS until his third-party action is *fully* concluded by settlement or judgment which is procured and paid.

While Roberts has admitted that he has accepted settlements from one or more of the defendants named in his third party action, he asserts in his appellant's brief that his third party action is not fully concluded because the judgment in his favor has not yet been paid.

Roberts asserts that although the statute speaks in terms of the singular when it provides that in circumstances where the employee shall procure a judgment "against such other party" or if settlement is made "with such other person," such phrases must be read inclusive of the plural. In construing statutes, "[w]ords importing the singular number only may be also applied to the plural of persons and things" unless such construction is plainly repugnant to the intent of the legislature or the context of the statute. Ind.Code § 1–1–4–1 (Burns Code Ed. Repl.2002). Reading such phrases to encompass multiple alleged tortfeasors who may have a legal liability to pay damages is consistent with the reality that in many cases there are multiple parties who may have contributed to an occupational disease and may therefore be liable to an injured employee for damages. Thus, under Roberts's interpretation of I.C. § 22–3–7–36(b), where there are multiple alleged tortfeasors, an injured employee would not be barred from seeking compensation benefits from his employer for an occupational disease

---

4. Nearly identical provisions are found in the WCA. *See* Ind.Code § 22–3–2–13 (Burns Code Ed. Supp.2003).

5. ACandS argues that Roberts has waived this argument by not presenting it to the Board in opposition to ACandS's motion to dismiss. However, we note that the basis for ACandS's motion to dismiss was that, because Roberts had settled with one or more defendants named in his civil action, he was barred by I.C. § 22–3–7–36(b) from seeking worker's compensation benefits. Further, the Board based its dismissal of Roberts's claim upon

those same grounds. Thus, the interpretation of the statute was a matter which was directly before the Board, and indeed, served as the basis for its order. We therefore conclude that Roberts has not waived the argument that pursuant to I.C. § 22–3–7–36(b) dismissal of his application is premature.

6. "Such employee" refers to an individual who is entitled to compensation under the ODA and for whose injury a third party may have a legal liability to pay damages in respect thereto.

unless he procures a judgment, which is paid, or settles with each of the alleged tortfeasors thereby fully concluding the third party action.

ACandS disagrees with such an interpretation of I.C. § 22–3–7–36(b) and directs our attention to *Waldridge v. Futurex Industries, Inc.*, 714 N.E.2d 783 (Ind. Ct.App.1999), *trans. denied.* In *Waldridge*, another panel of this court interpreted an essentially identical provision under the WCA, i.e. I.C. § 22–3–2–13.[7] In that case, Waldridge suffered injuries from her exposure to various chemicals while she was employed at Futurex from 1986–1988. In 1990, Waldridge filed with the worker's compensation board an application for adjustment of claim against Futurex, in addition to filing a third party action against "various chemical manufacturers" in federal court. *Id.* at 784. In 1992, Waldridge entered into a settlement agreement and release with one of the named defendants in the third party action. Thereafter, Futurex filed a motion to dismiss Waldridge's worker's compensation claim. The Board affirmed a single hearing member's decision to dismiss Waldridge's worker's compensation claim pursuant to I.C. § 22–3–2–13, concluding that Waldridge was barred from worker's compensation recovery after "settlement of her third party claim in federal court." *Id.*

Upon appeal to this court, Waldridge argued that the release rule provision found in I.C. § 22–3–2–13 was impliedly repealed by the Comparative Fault Act ("CFA"). The court considered the nature, scope, and policies of the WCA and the CFA and held that the release rule provision remained intact after the adoption of the CFA. *Id.* at 786–87. The court went on to conclude that pursuant to I.C. § 22–3–2–13, because Waldridge had entered into a settlement and release "with a third party defendant," she was barred from seeking worker's compensation benefits. *Id.* at 787.

ACandS would have us read *Waldridge* to say that pursuant to I.C. § 22–3–7–36(b), an employee is barred from seeking worker's compensation benefits after he settles with any other alleged tortfeasor, regardless of how small the proportion of fault which is attributable to such other party. ACandS thus argues that as soon as Roberts settled with any of the defendants in his civil action, as he did here prior to going to trial, Roberts was thereafter barred from recovering worker's compensation benefits from ACandS.

█ The policy of the law generally is to discourage litigation and encourage negotiation and settlement of disputes. *Mendenhall v. Skinner and Broadbent Co. Inc.*, 728 N.E.2d 140, 145 (Ind.2000). To adopt ACandS's interpretation of I.C. § 22–3–7–36(b) would appear to do just the opposite—hinder negotiations and settlement and encourage litigation. Indeed, under circumstances where there are multiple alleged tortfeasors, injured employees would be discouraged from settling with even the least culpable tortfeasor for fear

---

7. That provision, referred to as the release rule provision, is applicable to worker's compensation claims other than for occupational diseases. Specifically, I.C. § 22–3–2–13 provides:

"In the event the injured employee, ... not having received compensation or medical, surgical, hospital or nurses' services and supplies or death benefits from the employer or the employer's compensation insurance carrier, shall procure a judgment against the other party for injury or death, which judgment is paid, or if settlement is made with the other person either with or without suit, then the employer or the employer's compensation insurance carrier shall have no liability for payment of compensation or for payment of medical, surgical, hospital or nurses' services and supplies or death benefits whatsoever...."

of terminating his employer's liability. Moreover, in such a situation, ACandS's interpretation does not foster the policy of prohibiting double recovery for which the provision was enacted.

Although the court in *Waldridge* concluded that the claimant was barred from seeking worker's compensation benefits because she had settled with "*a* third party defendant," the court so concluded in affirming the Board's decision to dismiss her application for benefits because of her "settlement of her third party claim in federal court." This language could be read to mean that Waldridge's third party claim was fully concluded. However, we note that the status of the other defendants initially named in Waldridge's action is unclear. If those other defendants still remained as part of the third party action, then Waldridge's action was not fully concluded. Thus, to the extent that the facts in *Waldridge* can be read to say that the third party action was fully concluded, we believe it was a correct application of the law. However, to the extent that *Waldridge* may be read as ACandS urges, we decline to follow it.

Here, although Roberts settled with one or more defendants, his third party claim was still pending as to the several defendants who remained in the lawsuit. Under our reading of the statute, Roberts would not be barred from seeking worker's compensation benefits until his third party claim is fully concluded by settlement or a judgment which was paid. At the time of the Board's dismissal of his claim, Roberts

had settled with some defendants and a judgment had been rendered as to the remaining defendants. However, there is no evidence that the judgment had been paid or even tendered to Roberts. Indiana Code § 22–3–7–36(b) requires that a settlement be reached or a judgment be rendered *and paid* before the employer's liability for compensation terminates.

Therefore, we hold that because there was no evidence before the Board as to whether Roberts's judgment has been paid, and thus, that his third party claim was fully concluded, we hold that the Board's dismissal of Roberts's Application for worker's compensation benefits pursuant to I.C. § 22–3–7–36(b) was premature.[8]

The decision of the Board is reversed and the cause is remanded for further proceedings.

ROBB, J., and BROOK, Sr.J., concur.

---

8. Until such time as Roberts's third party action is fully concluded, Roberts may seek worker's compensation benefits. However, if Roberts receives worker's compensation benefits prior to the conclusion of his third party claim, Roberts will be subject to the subrogation provision found under I.C. § 22–3–7–36(a). Under such provision, Roberts will be required to reimburse his employer for any

benefits paid out of his recovery in his third party action. Because we have concluded that dismissal of Roberts's Application was premature, we do not address his arguments challenging the constitutionality of I.C. § 22–3–7–36(a) and (b) in application to employees whose employers are demonstrably at fault for part of the employees' injury.