**Willene GRAY, Widow of Willie Gray, Appellant–Plaintiff,**

v.

**DAIMLER CHRYSLER CORPORATION, Appellee–Defendant.**

No. 93A02–0408–EX–673.

Court of Appeals of Indiana.

Jan. 27, 2005.

Rehearing Denied April 6, 2005.

Karen B. Neiswinger, Indianapolis, IN, Attorney for Appellant.

Diana L. Wann, McCray, Lavallo, Frank, Klinger, Lebanon, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Willene Gray appeals the dismissal of her application for adjustment of claim by the Worker's Compensation Board ("the Board"). We affirm.

*Issue*

Gray raises one issue for our review, which we restate as whether Indiana Code section 22–3–7–9(f)(1) as applied violates Article I, Section 23 of the Indiana Constitution.

*Facts and Procedural History*

Gray is the widow of Willie Gray. From 1955 to December 31, 1981, Willie worked at Daimler Chrysler's ("Chrysler") foundry in Indianapolis, Indiana. Willie worked in various areas of the foundry including its coal room. Gray claims that while working at Chrysler's foundry, Willie was exposed to silica dust. Silica, also known as silicon dioxide, is a white or colorless crystalline compound occurring abundantly as quartz, sand, agate, and many other minerals. *See* The American Heritage Dictionary of the English Language (William Morris ed., 1981). Silica is used to manufacture a variety of materials like glass and concrete. *Id.* Long-term inhalation of silica dust can cause silicosis, which is a fibrosis of the lungs resulting in chronic shortness of breath. *Id.*

In August 2001, Willie was admitted to Winona Hospital in Indianapolis complaining of shortness of breath. It was found that Willie had trouble breathing in any position other than in an upright position, a condition known as orthopnea, and that he sometimes awoke at night gasping for air and was only able to catch his breath by sitting or standing up, a condition known as paroxysmal nocturnal dyspnea. Willie's treating physician was Dr. Ramon Dunkin. On August 7, 2001, Dr. Dunkin diagnosed Willie as suffering from silicosis due to his having worked at the Chrysler foundry. Willie died on December 29, 2001. Dr. Dunkin concluded that Willie's death was caused by "respiratory failure and broncogenic carcinoma, due to his exposure to silica while on the job at Chrysler Foundry." Appellant's Appendix at 26.

On May 2, 2003, Gray filed her application for adjustment of claim with the Board against Chrysler. Chrysler responded by filing a motion to dismiss, arguing that Gray's claim was barred by the limitations period provided in Indiana Code section 22–3–7–9(f)(1). Gray filed a motion in opposition to Chrysler's motion to dismiss, which included an affidavit from Dr. Dunkin. In his affidavit, Dr. Dunkin stated that prior to August 7, 2001, Willie had no notice and could not have known that he had any lung disease associated with his employment at the Chrysler foundry.

On February 18, 2004, a hearing was held before single Board member John A. Rader. At this hearing, the parties stipulated to the following facts:

1. That [Gray's] decedent was last employed by [Chrysler] on or about December 31, 1981.

2. That [Gray's] decedent's date of last exposure within the meaning of the Occupational Disease Act was December 31, 1981.

3. That [Gray] now alleges that her decedent's date of disability was in 2001.

4. That [Gray's] decedent died on or about December 29, 2001.

5. That [Gray's] application was filed on May 2, 2003.

6. That [Gray] claims that her decedent suffered an occupational disease by inhalation of silica dust in the course and scope of his employment.

7. That solely for purposes of [Gray's] discovery rule argument and the Board's ruling on the Motion To Dismiss, [Chrysler] stipulated that [Gray's] decedent had no notice of lung disease prior to August 7, 2001.

Appellant's App. at 6–7. On March 17, 2004, Rader issued an order granting Chrysler's motion to dismiss. In this order, Rader first concluded that Indiana Code section 22–3–7–9 was "a non-claim statute as opposed to a statute of limitations." Appellant's App. at 7. Rader ultimately found that Gray's claim was barred because Willie's "disablement did not occur within three years after the last day of the last exposure to the hazards of the disease." *Id.*

Gray filed a timely request for a hearing before the entire Board. The entire Board held a hearing on June 29, 2004, and, in an order dated July 15, 2004, adopted Rader's decision. This appeal ensued.

*Discussion and Decision*

Gray argues that Indiana Code section 22–3–7–9(f)(1) violates Article I, Section 23 of the Indiana Constitution. We disagree.

I. Standard of Review

■■■ On appeal, we review a decision of the Board only to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions. *Walker v. Muscatatuck State Dev. Ctr.,* 694 N.E.2d 258, 266 (Ind.1998). We do not reweigh the evidence or judge the credibility of witnesses. *Id.* However, where, as here, the questions before us are primarily of a legal nature "we do not grant the same degree of deference to the Board's decision, for law is the province of the judiciary and our constitutional system empowers the courts to draw legal conclusions." *Id.* When questions of law are presented, our standard of review is *de novo. Stytle v. Angola Die Casting Co.,* 783 N.E.2d 316, 320 (Ind.Ct.App.2003).

■■■ Furthermore, it is important to note that this case involves analysis of a statute found within the Occupational Diseases Act, an act that is part of our state's

worker's compensation scheme. The Occupational Diseases Act, Indiana Code chapter 22–3–7, introduced more than twenty years after the Worker's Compensation Act, was enacted by our General Assembly in order to protect employees by providing compensation, without regard to fault, for those who contracted occupational diseases which were generally not covered under the Worker's Compensation Act. *Roberts v. ACandS, Inc.,* 806 N.E.2d 1, 3 (Ind.Ct.App.2004). Therefore, as with provisions of the Worker's Compensation Act, provisions of the Occupational Diseases Act should be liberally construed in favor of the employee to effectuate the act's humanitarian purpose to provide injured workers with an expeditious and adequate remedy. *Id.*

 Here, Gray alleges that Indiana Code section 22–3–7–9(f)(1) violates the Indiana Constitution. When a statute is challenged as being unconstitutional, we presume that the statute is constitutional until that presumption is overcome by a contrary showing. *Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind.1996). "The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party." *Id.* "If there are two reasonable interpretations of a statute, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless such is required by the unambiguous language of the statute." *Id.*

## II. Article I, Section 23, the Privileges and Immunities Clause

The Board concluded that Indiana Code section 22–3–7–9(f)(1) barred Gray's claim. Indiana Code section 22–3–7–9(f) provides in pertinent part:

For the purposes of this chapter, no compensation shall be payable for or on account of any occupational diseases unless disablement, as defined in subsection (e), occurs within two (2) years after the last day of the last exposure to the hazards of the disease except for the following:

(1) In all cases of occupational diseases caused by the inhalation of silica dust or coal dust, no compensation shall be payable unless disablement, as defined in subsection (e), occurs within three (3) years after the last day of the last exposure to the hazards of the disease.

(2) In all cases of occupational disease caused by the exposure to radiation, no compensation shall be payable unless disablement, as defined in subsection (e), occurs within two (2) years from the date on which the employee had knowledge of the nature of his occupational disease or, by exercise of reasonable diligence, should have known of the existence of such disease and its causal relationship to his employment.

(3) In all cases of occupational diseases caused by the inhalation of asbestos dust, no compensation shall be payable unless disablement, as defined in subsection (e), occurs within three (3) years after the last day of the last exposure to the hazards of the disease if the last day of the last exposure was before July 1, 1985.

(4) In all cases of occupational disease caused by the inhalation of asbestos dust in which the last date of the last exposure occurs on or after July 1, 1985, and before July 1, 1988, no compensation shall be payable unless disablement, as defined in subsection (e), occurs within twenty (20) years

after the last day of the last exposure.

(5) In all cases of occupational disease caused by the inhalation of asbestos dust in which the last date of the last exposure occurs on or after July 1, 1988, no compensation shall be payable unless disablement (as defined in subsection (e)) occurs within thirty-five (35) years after the last day of the last exposure.

Indiana Code section 22–3–7–9(e) defines "disablement" as "the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he claims compensation or equal wages in other suitable employment, and 'disability' means the state of being so incapacitated." Indiana Code section 22–3–7–6 is also relevant, and it provides:

[t]he rights and remedies granted under this chapter to an employee subject to this chapter on account of disablement or death by occupational disease arising out of and in the course of the employment shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such disablement or death.

Ind.Code § 22–3–7–6.

We have recently stated that Indiana Code section 22–3–7–9(f) is "a statute of repose, rather than a statute of limitation." *Stytle v. Angola Die Casting Co.*, 806 N.E.2d 339, 342 (Ind.Ct.App. 2004), *trans. denied.* A statute of repose "is designed to bar actions after a specified period of time has run from the occurrence of some event other than the injury which gave rise to the claim." *Kissel v. Rosenbaum*, 579 N.E.2d 1322, 1326 (Ind.Ct.App. 1991). In distinguishing between a statute of limitations and a statute of repose, we

have stated, "A statute of limitation extinguishes a remedy while a statute of repose may bar a cause of action even before it arises." *Id.*

The Board determined, and the parties do not seem to dispute this, that because Willie's disablement did not occur within three years after the last day of his last exposure to silica dust, which the parties stipulated was December 31, 1981, Gray's claim was barred by the statute. However, in order to avoid having her claim barred, Gray argues that Indiana Code section 22–3–7–9(f)(1) as applied violates Article I, Section 23 of the Indiana Constitution. Article I, Section 23, the Privileges and Immunities Clause, states that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

Chrysler argues that previous decisions of this court and of our supreme court have already determined that Indiana Code section 22–3–7–9(f) is constitutional. Our research has uncovered several relevant cases. In *Poke v. Peerless Foundry Co.*, 127 Ind.App. 348, 141 N.E.2d 133 (1957) and *Woldridge v. Ball Bros. Co.*, 129 Ind.App. 420, 150 N.E.2d 911 (1958), employees sought benefits through the Occupational Diseases Act, under the statute that was the predecessor to the statute at issue here, for disability they suffered due to their work-related exposure to silica dust. The statute provided then, as it still does today, that any claim must be brought within three years of the employee's last work-related exposure to silica dust or be barred. Neither employee argued that the time limitation in the statute was unconstitutional. The Board found that each employee's claim was barred because his disablement had not occurred within three years of his last silica exposure and we affirmed both of these deci-

sions. *Poke*, 141 N.E.2d at 135; *Woldridge*, 150 N.E.2d at 913.

Several years later, in *Bunker v. National Gypsum Co.*, 426 N.E.2d 422 (Ind. Ct.App.1981), an employee, Bunker, who suffered from asbestosis, did challenge the constitutionality of Indiana Code section 22–3–7–9(f).[1] National Gypsum employed Bunker from 1949 to 1966. From 1949 to 1950, Bunker was exposed to asbestos fibers. Bunker learned that he had asbestosis in 1976, and filed a claim for disability benefits under the Occupational Diseases Act in 1978. The Board found that Bunker's claim was barred because his disability had not arisen within three years of his last work-related exposure to asbestos. Bunker appealed, arguing that the three-year time limit for filing a claim imposed by Indiana Code section 22–3–7–9(f) deprived him of his constitutional right to due process. After considering medical evidence regarding the latency period of asbestos, we agreed with Bunker that Indiana Code section 22–3–7–9(f) as applied violated his constitutional right to due process. 426 N.E.2d at 425.

However, on transfer, our supreme court reversed. *Bunker*, 441 N.E.2d at 14. The court concluded that we erred by using medical evidence concerning asbestos. *Id.* at 11. The court stated that "the Court of Appeals has in effect rewritten this law thereby usurping the legislature's constitutionally mandated function. If we were to affirm the Court of Appeals in their decision, the legislative intent to provide a definitive time period within which

all occupational disease claims must be brought would be frustrated." *Id.* at 13. The court concluded that the three-year time limitation in Indiana Code section 22–3–7–9(f) did not violate Bunker's constitutional right to due process. *Id.*

We recently considered the constitutionality of Indiana Code section 22–3–7–9(f) in *Stytle*. There, the employee, Stytle, worked for Angola Die Casting from 1984 through 1990. After leaving Angola, Stytle was diagnosed with possible Alzheimer's disease and became totally disabled in 1998. In 2000, a psychiatrist concluded that Stytle's exposure to aluminum during his employment at Angola might have caused his cognitive problems. That same year, Stytle filed an application for adjustment of claim against Angola. Angola filed a motion to dismiss. The Board granted Angola's motion to dismiss concluding that Stytle's claim was barred because his disablement did not occur within two years of his last work-related exposure to aluminum.[2]

On appeal, Stytle argued that Indiana Code section 22–3–7–9(f) as applied violated Article I, Section 12 of the Indiana Constitution, the Open Courts Clause. We began our review by considering our supreme court's decision in *Bunker*. We noted that in *Bunker*, our supreme court stated that " '[t]he legislature has the sole duty and responsibility to determine what constitutes a reasonable time for the bringing of an action unless the period allowed is so manifestly insufficient that it represents a denial of justice.' " *Stytle*,

---

1. In *Bunker*, we referred to the statute at issue as Indiana Code section 22–3–7–9(f), which is how it was re-codified in 1979. In its opinion on transfer, our supreme court referred to the statute as Indiana Code section 22–3–7–9(e), which is how it was codified when Bunker initially brought his claim in 1978. *Bunker v. National Gypsum Co.*, 441 N.E.2d 8 (Ind. 1982).

2. Stytle's claim was subject to the two-year statute of repose found in Indiana Code section 22–3–7–9(f) because it originated out of his exposure to aluminum and not one of the other hazards, like silica, asbestos, or radiation, later described in the statute.

806 N.E.2d at 344 (quoting *Bunker*, 441 N.E.2d at 12). We concluded that Indiana Code section 22–3–7–9(f)'s two-year statute of repose was not so manifestly insufficient that it represented a denial of justice. *Stytle*, 806 N.E.2d at 345. We ultimately held that Indiana Code section 22–3–7–9(f) as applied did not violate Article I, Section 12 of the Indiana Constitution. *Id.*

We recognize that both *Bunker* and *Stytle* have addressed the constitutionality of Indiana Code section 22–3–7–9(f). However, neither of these cases addressed whether Indiana Code section 22–3–7–9(f)(1) as applied violated Article I, Section 23 of the Indiana Constitution. Furthermore, neither of these cases specifically considered the statute at issue here, which is Indiana Code section 22–3–7–9(f)(1). Therefore, we must proceed to consider whether Indiana Code section 22–3–7–9(f)(1) as applied violates the Privileges and Immunities Clause of the Indiana Constitution.

> Our supreme court has specified that Article [I], Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

*Collins v. Day,* 644 N.E.2d 72, 80 (Ind. 1994).

■ Gray begins by arguing that Indiana Code section 22–3–7–9(f) as applied violates Article I, Section 23 because it grants unequal privileges and immunities to the broad class of individuals who suffer from occupational diseases. She points out that Indiana Code section 22–3–7–9(f) confers preferential treatment upon individuals exposed to radiation that is not equally available to individuals who, for instance, are exposed to silica or coal dust. Indiana Code section 22–3–7–9(f)(2) affords the "discovery" rule to individuals exposed to radiation. This means that these individuals can receive compensation so long as their disablement "occurs within two (2) years from the date on which the employee had knowledge of the nature of his occupational disease or, by exercise of reasonable diligence, should have known of the existence of such disease and its causal relationship to his employment." Ind. Code § 22–3–7–9(f)(2). Such a benefit is not extended to individuals who are exposed to silica or coal dust. These individuals' claims are barred unless disablement occurs within three years of their last exposure to the hazard. Ind.Code § 22–3–7–9(f)(1).

However, all individuals who suffer from an occupational disease are not similarly situated. Not all individuals with an occupational disease have been exposed to the same sort of work-related hazard, nor do they all suffer from the same type of disease with the same symptoms. Furthermore, the inherent distinctions between individuals who suffer from the various types of occupational diseases justifies the disparate treatment accorded to them in Indiana Code section 22–3–7–9(f).

Gray next contends that Indiana Code section 22–3–7–9(f)(1) as applied violates Article I, Section 23 because it grants unequal privileges and immunities to the class of individuals exposed to silica dust while on the job. Under Indiana Code section 22–3–7–9(f)(1), individuals whose disablement due to silica dust occurs within three years of their last work-related

exposure to that hazard are entitled to compensation, while individuals whose disablement occurs beyond the three year time frame are left with no remedy.

Gray asserts that the situation presented here is similar to the one our supreme court faced in *Martin v. Richey*, 711 N.E.2d 1273 (Ind.1999). In that case, the patient, Martin, sued her doctor, Dr. Richey, under Indiana's Medical Malpractice Act for his failure to timely diagnose her breast cancer. Dr. Richey argued that Martin's complaint was time-barred under Indiana Code section 34–18–7–1(b), which provides:

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect....

The trial court granted summary judgment for Dr. Richey. On appeal, Martin contended that the statute of limitations in Indiana Code section 34–18–7–1(b) violated the Privileges and Immunities Clause of the Indiana Constitution. We reversed the trial court holding that the statute of limitations in Indiana Code section 34–18–7–1(b) was unconstitutional on its face because it violated Article I, Sections 12 and 23 of the Indiana Constitution.

On transfer, our supreme court agreed with our conclusion that the preferential treatment extended under Indiana Code section 34–18–7–1(b) was not uniformly applicable to all malpractice victims, but disagreed with our conclusion that the statute was facially unconstitutional. *Id.* The court ultimately held that the statute of limitations in Indiana Code section 34–18–7–1(b) as applied to Martin was unconstitutional under Article I, Section 23. *Id.* at 1282.

■■■ We believe that *Martin* is distinguishable. *Martin* dealt with the constitutionality of a statute of limitations, while here, we are asked to decide whether a statute of repose is constitutional. As we earlier stated, a statute of repose is not the same thing as a statute of limitations. Unlike a statute of limitations, a statute of repose may bar a cause of action before it arises, which is what happened here. *See Kissel*, 579 N.E.2d at 1326.

We do, however, believe that *McIntosh v. Melroe Co.*, 729 N.E.2d 972 (Ind.2000), is instructive here. In that case, McIntosh brought suit under Indiana's Product Liability Act for injuries he sustained while using a piece of machinery manufactured by Melroe, which he alleged was defective. Melroe filed a motion for summary judgment based on the statute of repose in Indiana Code section 34–20–3–1(b), which provides that "a product liability action must be commenced ... within ten (10) years after the delivery of the product to the initial user or consumer." The trial court granted Melroe's motion for summary judgment and we affirmed.

On transfer before our supreme court, McIntosh argued that the statute of repose in Indiana Code section 34–20–3–1(b) violated Article I, Section 23 of the Indiana Constitution. He asserted that the statute created "an impermissible distinction between tort victims injured by products more than ten years old and those injured by products less than ten years old." *Id.* at 980. The court followed the analysis created in *Collins* for claims under Article I, Section 23. They first considered "whether the statute of repose is reasonably related to the inherent characteristics that define the distinction." *Id.* at 981. The court stated that "the statute of repose reflects the legislative determination that product failures occurring more than

ten years after delivery to the first user are not fairly laid at the door of the manufacturer. It also promotes certainty and finality by limiting the exposure of manufacturers to ten years after a product is first used." *Id.* The court concluded that "[t]he distinction that follows between persons injured by products less than ten years old and those injured by products more than ten years old is rationally related to serving these legislative goals and is a permissible balancing of the competing interests involved." *Id.*

The court next considered whether the preferential treatment accorded under Indiana Code section 34–20–3–1(b) was uniformly applicable and equally available to all persons similarly situated. The court began by comparing this case to *Martin,* and stated that "[u]nlike the plaintiff in *Martin* who had an otherwise valid tort claim but was unable to discover it within the statute of limitations, the McIntoshes have never had a legally cognizable injury." *Id.* at 983. The court then said, "On its face the statute applies to everyone. All citizens are prevented from accruing claims based on products in use longer than a decade. The McIntoshes belong to no subset of that class. They are treated no differently from any other person injured more than ten years after a product is first used or consumed." *Id.* The court concluded that the statute was uniformly applicable to all persons similarly situated, and ultimately held that it did not violate Article I, Section 23. *Id.* at 984.

■ Here, it almost goes without saying that the Occupational Diseases Act only protects those workers who come within its provisions. *Baker v. Westinghouse Electric Corp.,* 637 N.E.2d 1271, 1275 (Ind.1994). To fall within the provisions of Indiana Code section 22–3–7–9(f)(1), an individual's disablement must arise within three years of his or her last work-related exposure to silica dust. Individuals who do fall within the provisions of Indiana Code section 22–3–7–9(f)(1) are afforded preferential treatment in that they are permitted to file a claim with the Board seeking compensation for their disablement. Gray does not fall within the provisions of Indiana Code section 22–3–7–9(f)(1) because Willie's disablement did not arise within three years of his last work-related exposure to silica dust. We believe that the preferential treatment afforded under Indiana Code section 22–3–7–9(f)(1) is uniformly applicable and equally available to all employees whose disablement arises within three years after their last work-related exposure to silica dust. Likewise, individuals like Gray, who have no legally cognizable claim under Indiana Code section 22–3–7–9(f)(1), are treated equally. Indiana Code section 22–3–7–9(f)(1) uniformly bars all claims from individuals whose disablement did not arise within three years of their last work-related exposure to silica dust. Gray does not belong to any subset of the class of individuals whose claims are barred because their disablement did not arise within three years of their last work-related exposure that claims to have been treated unequally. Gray has been treated no differently than any other individual whose disablement arose more than three years after their last work-related exposure to silica dust. Therefore, under *Collins,* the preferential treatment afforded under Indiana Code section 22–3–7–9(f)(1) is uniformly applicable and equally available to all persons similarly situated.

Pursuant to *Collins,* we must also consider whether the disparate treatment accorded by Indiana Code section 22–3–7–9(f)(1) is reasonably related to inherent characteristics that distinguish the unequally treated classes. We have previ-

ously stated that "[s]tatutes of repose are based upon considerations of the economic best interests of the public as a whole and are substantive grants of immunity based upon a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists." *Kissel,* 579 N.E.2d at 1328. We must accord considerable deference to the manner in which our legislature has balanced the competing interests involved. *Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 404–05, 404 N.E.2d 585, 604 (1980). Here, our legislature has struck an economic balance between the interests of individuals who suffer from occupational diseases and their employers. The statute of repose in Indiana Code section 22–3–7–9(f)(1) reflects the legislative determination that disablement occurring more than three years after the employee's last work-related exposure to silica dust is not an injury for which employers should be liable. It also promotes certainty and finality by limiting the exposure of employers to three years after the last work-related contact with silica dust. The distinction between individuals who suffer disablement within three years of their last exposure to silica dust and those who do not suffer disablement within three years is rationally related to serving these legislative goals and is a permissible balancing of the competing interests involved here. Were we to conclude that Indiana Code section 22–3–7–9(f)(1) did violate Article I, Section 23 of the Indiana Constitution, we would be upsetting the balance created by the legislature, and, in effect, usurping the powers of the legislature by essentially rewriting this statute. *See Bunker,* 441 N.E.2d at 13. Although we recognize that this result is harsh, we believe we must conclude that Indiana Code section 22–3–7–9(f)(1) as applied is not unconstitutional pursuant to Article I, Section 23.

*Conclusion*

We conclude that Indiana Code section 22–3–7–9(f)(1) as applied is not unconstitutional pursuant to Article I, Section 23 of the Indiana Constitution. We therefore affirm the Board's order granting Chrysler's motion to dismiss.

Affirmed.

RILEY and CRONE, JJ., concur.