**Beverly ROBERTS, on behalf of the Estate of William L. Roberts, Jr., Appellant,**

v.

**ACANDS, INC., Appellee.**

No. 93A02–0702–EX–180.

Court of Appeals of Indiana.

Aug. 8, 2007.

Publication Ordered Sept. 13, 2007.

Linda George, W. Russell Sipes, Aaron T. Milewski, George & Sipes, LLP, Indianapolis, IN, Attorneys for Appellant.

Sharon Funcheon Murphy, Lewis Wagner LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Petitioner Beverly Roberts, on behalf of the estate of William L. Roberts, Jr. ("the Estate"), appeals from an order of the Full Worker's Compensation Board of Indiana ("the Board") dismissing Roberts's claim against his former employer, ACandS, Inc. ("ACandS"), for worker's compensation benefits pursuant to the Occupational Diseases Act. We affirm.

### Issues

The Estate presents two issues for review:

I. Whether the Board's dismissal of Roberts's worker's compensation application pursuant to Indiana Code Section 22–3–7–36(b) was premature; and alternatively,

II. Whether I.C. § 22–3–7–36(b) is unconstitutional as applied to the Estate.

### Facts and Procedural History

The relevant facts as recited in a previous appeal are as follows:

Roberts was a union insulator from 1957 through his retirement in 1994. During his over twenty-five years of employment with ACandS, Roberts worked on a multitude of jobs installing, handling, removing, or otherwise working directly with asbestos-containing insulation products. As a result, Roberts developed terminal malignant peritoneal mesothelioma, a disease most often associated with exposure to asbestos. Roberts was diagnosed with the disease in July 2001.

On August 1, 2001, Roberts and his wife, Beverly, filed a civil suit for damages in Marion County Superior Court against a number of defendants whom they alleged contributed to Roberts's disease. On November 10, 2001, Roberts filed with the Board an Application for Adjustment of Claim ("Application") against ACandS. There is nothing in the record, however, which indicates that Roberts ever sought or received worker's compensation benefits pursuant to his Application. Roberts did, however, pursue his third party action.

Prior to a jury trial upon his complaint, Roberts accepted payment pursuant to several settlement agreements[,] which he had reached with one or more defendants whom he had named in the civil action. The total amount of these settlements exceeded $3,800,000. On May 24, 2002, a jury returned a verdict assessing damages for Roberts in the amount of $2,800,000 and damages for Beverly in

the amount of $1,000,000. When the verdict was returned, four defendants and numerous nonparties, including ACandS, remained in the action. The jury apportioned 12% fault against Roberts, 13% fault against PSI Energy, Inc.,[1] 36% fault against ACandS, and a total of 39% fault against various other nonparties. The trial court entered a judgment upon the verdict. However, there is nothing in the record which indicates that the judgment has been paid and accepted or even tendered.

On August 1, 2002, ACandS filed a motion to dismiss Roberts's worker's compensation Application. On March 6, 2003, a single hearing member of the Board issued an order dismissing Roberts's Application. Finding that the facts were not in dispute, the single hearing member concluded that, because Roberts had settled with one or more third parties, pursuant to I.C. § 22–3–7–36, ACandS had no further liability to compensate Roberts for his occupational disease. Roberts sought review of the single hearing member's decision by the full Board, and a hearing was subsequently held on June 24, 2003. On July 28, 2003, the full Board adopted and affirmed the single hearing member's decision dismissing Roberts's Application.

*Roberts v. ACandS, Inc.*, 806 N.E.2d 1, 2–3 (Ind.Ct.App.2004) (second footnote omitted) ("*Roberts I*").[2] Roberts appealed the dismissal of his Application, presenting the identical issues presented in the current appeal. In *Roberts I*, this Court held that because there was no evidence that the third-party lawsuit judgment had been paid or tendered to Roberts at the time of the Board's ruling that the dismissal of Roberts's Application pursuant to I.C. § 22–3–7–36(b) ("Section 36(b)") was premature. *Id.* at 6. The cause was then remanded for further proceedings. Roberts passed away on March 21, 2004, and his Estate was substituted as Plaintiff in this action.

After the appeals in the third-party lawsuit were exhausted and the verdict defendant paid its portion of the judgment, ACandS filed a second motion to dismiss Roberts's Application pursuant to Section 36(b). On November 22, 2006, a Single Hearing Member of the Board issued an order granting the motion to dismiss. In response to the Estate's request for a Full Board review, the Full Board issued an order affirming the Single Hearing Member's decision. This appeal ensued.

## Discussion and Decision

### I. Dismissal of Application

■ The parties filed stipulations as to the facts involved in this matter. The issue as to whether the dismissal of Roberts's Application was premature turns on the interpretation of a statute within the Occupational Disease Act ("ODA"), which is part of the worker's compensation scheme. As with interpretation of provisions of the Worker's Compensation Act ("WCA"), the provisions of the ODA should be liberally construed in favor of

1. PSI Energy, Inc. was one of the four remaining defendants. The jury found in favor of Central Soya Company, Inc., Eli Lilly & Company, and The Kroger Company, the other named defendants who remained in the action.

2. Following the trial court's entry of judgment upon the verdict in the third-party lawsuit, PSI Energy, Inc. appealed to this court seeking reversal of the judgment in favor of the Robertses. *See PSI Energy, Inc. v. Roberts*, 802 N.E.2d 468 (Ind.Ct.App.2004) (affirming the judgment), *trans. granted.* On transfer, the Indiana Supreme Court sustained the judgment in favor of the Robertses in *PSI Energy, Inc. v. Roberts*, 834 N.E.2d 665 (Ind.2005).

the employee to effectuate its humane purpose. *See Walker v. Muscatatuck State Dev. Ctr.,* 694 N.E.2d 258, 266 (Ind.1998). Further, where, as here, the facts are not in dispute and the matter for our review is primarily a legal question, we do not grant the same degree of deference to the Board's decision as we would if the issue were of fact, because law is the province of the judiciary and our constitutional system empowers the courts to draw legal conclusions. *Id.*

As in the prior appeal, the Estate argues that the dismissal of the Application pursuant to Section 36(b) was premature. The Estate contends that it is not proper to dismiss the Application until all of the third-party actions are fully concluded. The Estate declares that it intends on seeking compensation from certain defendants that were originally named in the complaint but changed to the status of nonparty due to the companies filing for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code.

The release of liability provision in the ODA provides:

> In the event such employee ..., not having received compensation or medical, surgical, hospital, or nurse's services and supplies or death benefits, or such employer's occupational disease insurance carrier, *shall procure a judgment against such other party* for disablement or death from an occupational disease arising out of and in the course of the employment, *which judgment is paid, or if settlement is made* with such other person, either with or without suit, *then the employer or such employer's occupational disease insurance carrier shall have no liability* for payment of compensation or for payment of medical, surgical, hospital, or nurse's services and supplies or death benefits whatsoever, whether or not one (1) or all of the

dependents are entitled to share in the proceeds of settlement or recovery and whether or not one (1) or all of the dependents could have maintained the action or claim for wrongful death.

I.C. § 22–3–7–36(b) (emphasis added). As stipulated by the parties, the third-party lawsuit is final, the verdict defendant paid its portion of the judgment in full, and the Estate received in excess of four million dollars as a result of the payment of the settlements and judgment. Also, the maximum allowable recovery under the ODA for the facts of this case is $274,000, making the recovery from third parties far in excess of what could have been obtained through the ODA. Here, the requirements of the release of liability statute are fulfilled: Roberts did not receive any worker's compensation, the Estate procured a judgment against and settlements with third parties, and those sums have been paid in full. Furthermore, the amounts recovered are in excess of the potential amount recoverable under the ODA, and such a dismissal will not impair the Estate's pursuit of claims against the bankrupt defendants. The dismissal of the Application was proper.

## II. Constitutionality of the ODA Release of Liability Provision

Alternatively, the Estate challenges the constitutionality of Section 36(b) under Article I, Sections 23 and 12 of the Indiana Constitution. Its contention is that this provision in conjunction with the Comparative Fault Act places an unconstitutional disadvantage on employees whose employers are partially at fault for a work-related disease.

When a statute is challenged as being unconstitutional, we presume that the statute is constitutional until that presumption is overcome by a contrary show-

ing. *Gray v. Daimler Chrysler Corp.*, 821 N.E.2d 431, 435 (Ind.Ct.App.2005). The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. *Id.* If there are two reasonable interpretations of a statute, one of which is constitutional and the other not, we will choose the interpretation which permits upholding the statute because we will not presume that the legislature violated the constitution unless such is required by the unambiguous language of the statute. *Id.*

### A. Article I, Section 23, the Privileges and Immunities Clause

The Privileges and Immunities Clause provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Our Supreme Court has specified that:

> Article [I], Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics, which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

*Collins v. Day*, 644 N.E.2d 72, 80 (Ind. 1994).

■ Here, the Estate concedes that Section 36(b), the release of liability provision of the ODA, fulfills the first prong of the analysis set forth by *Collins*. The two different classes are those injured employees/claimants who have obtained relief for their injuries resulting from an occupational disease from a third party and those injured employees/claimants who have not. The inherent characteristic distinguishing the two classes is whether the injured employee has obtained relief from a source other than the employer. The basis for the release of liability of employers of the first class of employees is the general policy of prohibiting an employee from obtaining a double recovery for his injury. *See Waldridge v. Futurex Indus., Inc.*, 714 N.E.2d 783, 786 (Ind.Ct.App.1999).

The Estate argues that Section 36(b) does not meet the second prong of the *Collins* analysis. It is not the facial validity of the statute that is challenged, but rather whether the statute is constitutional as applied to the facts of this case.[3] A statute may be valid under the first prong of *Collins* yet be invalid under the second prong, if as applied to a subset of a facially homogeneous class, it confers a different privilege or harm. *McIntonsh v. Melroe Co.*, 729 N.E.2d 972, 981 (Ind.2000). The Estate asserts that the ODA, in conjunction with Comparative Fault Act ("CFA"), creates two subclasses of injured employees: (1) employees injured through no fault of their employer, and (2) employees injured at least in part by the actions or omissions of their employer.

When an employee is disabled or dies from an occupational disease and a third

---

**3.** The Estate also alleges that section (a) of the same statute is also unconstitutional as applied. However, this provision is not applicable to this case. This provision requires the employee or his dependents to repay the employer for any compensation received if the employee/dependent is successful in a third-party lawsuit. *See* I.C. 22–3–7–36(a). Roberts and his Estate have received no compensation from ACandS and, therefore, would not be required to pay any sums received from the third-party litigation to ACandS.

party is either partly or wholly at fault, the employee or his dependents may commence a civil lawsuit against the responsible third parties. Ind.Code § 22–3–7–36(a). If an employee brings such a lawsuit, his employer cannot be named as a defendant because the provisions of the ODA are the exclusive remedies that an employee has against his employer. *See* Ind.Code § 22–3–7–6. While the third-party civil lawsuit is pending, the employee may also submit an application for compensation from his employer for his injuries pursuant to the ODA. I.C. § 22–3–7–36(a).

A third-party lawsuit brought by an employee would be governed in part by the CFA because it is a fault-based action. *See* Ind.Code § 34–51–2–7. Under the CFA, regardless of the number of third-party defendants named in the lawsuit or nonparties named by a defendant as contributing to the injuries suffered by the plaintiff, the jury is instructed to determine the percentage of fault of the plaintiff, of the defendant, and of any person designated as a nonparty. *Id.* The jury then uses these percentages to determine for what amount of the plaintiff's total damages each defendant is liable. *Id.*

Before 1995, the CFA defined a nonparty as "a person who is, or may be liable to the claimant in part or in whole for the damages claimed but who has not been joined in the action as a defendant by the claimant. A nonparty shall not include the employer of the claimant." Ind.Code Ann. § 34–4–33–2 (Burns Code Ed.1986) (amended 1995, repealed 1998). The current definition of a nonparty no longer excludes the employer of the claimant.

*See* Ind.Code § 34–6–2–88. Effectively, this amendment allowed juries in a civil third-party lawsuit to apportion fault for the employee's injuries to the employer. The Estate asserts that this change places an employee, whose occupational disease was caused in part by actions of his employer, at a disadvantage because his potential recovery from a third-party lawsuit is reduced by the percentage of fault attributable to his employer, who can now be named as a nonparty.

■ Clearly, Section 36(b) applies to release any injured employee's employer from liability upon the employee receiving payment of a judgment or settlement for his occupational disease from a third party. Thus, any injured employee within the scope of the ODA who obtains relief via a paid third-party lawsuit or settlement would no longer be entitled to any relief from their employer. Although the statute is facially uniformly applicable, the Estate contends that Section 36(b) is unconstitutional as applied to the facts of Roberts's case.[4] For a statute to be unconstitutional as applied, the statute must confer a different privilege or harm to a subset of a facially homogeneous class. *McIntonsh*, 729 N.E.2d at 981. The Estate argues that the release of liability provision, as applied to employees who are successful in a third-party lawsuit for damages due to their occupational disease, confers a different harm on those employees whose employers were partially at fault. The harm alleged by the Estate is the employee's inability to obtain a complete tort remedy for his injuries.

■ The Estate claims that Section 36(b) denied Roberts and his dependents a

---

4. The Estate offers numerous other scenarios where 36(b) could possibly be unconstitutional as applied. However, the analysis under the *Collins* test is whether a statute is unconstitutional as applied to the plaintiff. *See*

*Martin v. Richey*, 711 N.E.2d 1273, 1280 (Ind. 1999). These proffered hypotheticals are not the facts before us and are therefore not subject to our review.

complete remedy for his injuries because ACandS was found to be 36% at fault in the third-party lawsuit, effectively reducing the potential recovery of damages by that percentage.[5] We disagree with the Estate's argument that Roberts and his wife were unable to obtain a complete remedy because the sum of their recovery exceeds the total sustained damages found by the jury. Moreover, the ODA and the WCA are not fault-based schemes. These statutes provide that employers are required to compensate employees for any injury that occurs within the course and scope of employment without regard to whether any fault for the injury rests with the employer, employee, or third-party. The humanitarian purpose of these acts is to provide workers with an expeditious and *adequate* remedy, not a complete remedy. *See Gray,* 821 N.E.2d at 435. The release of liability provision of Section 36(b) is not unconstitutional as applied to the facts of this case.

### B. Article I, Section 12, the Open Courts Clause

■ Finally, the Estate argues that Section 36(b) violates Article I, Section 12 of the Indiana Constitution, the Open Courts Clause. Section 12 provides:

All courts shall be open; and every person for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely and without denial; speedily, and without delay.

The Estate does not argue that Section 36(b) is unconstitutional on its face, but rather relies on *Martin v. Richey* in its argument that Section 36(b) unconstitutionally denies a complete tort remedy as applied to the facts in this case. *Martin v. Richey,* 711 N.E.2d 1273 (Ind.1999). However, *Martin* is distinguishable because there our Supreme Court held that the occurrence-based statute of limitations of the Medical Malpractice Act was unconstitutional as applied to the plaintiff in that it completely denied Martin all access to the courts. *Id.* at 1282–1285. Here, Roberts, now his Estate, was not completely denied access to the courts. In fact, Roberts pursued third parties in a trial court and was successful.

■ Despite the judgment and settlements, the Estate claims Section 36(b) "imposes an unreasonable and arbitrary burden on Appellant's ability to obtain a complete tort remedy." Appellant's Br. at 24. As noted in *Cantrell v. Morris,* the Open Courts Clause does not specify any particular remedy for any particular wrong. *Cantrell v. Morris,* 849 N.E.2d 488, 499 (Ind.2006). Instead, it leaves the definition of wrongs and the specification of remedies to the legislature and the common law. *Id.* Here, the legislature has determined that, for the wrong of an occupational disease contracted in the course and scope of employment, the employee's remedy is either to collect compensation from his employer without the expense or delay of litigation or to proceed in litigation against at fault third parties.[6] Roberts, now his Estate, chose to pursue the

---

5. The stipulations submitted by the parties indicate that the civil judgment apportioned 26% fault to ACandS, but the sum of the percentages listed equals 90 rather than 100. We assume that this is a typographical error as the Estate and *Roberts I* states 36% fault was attributed to ACandS.

6. An employee can receive compensation from his employer while the third-party lawsuit is pending, however, this compensation in most cases must be repaid if the employee is successful in his lawsuit. For simplicity, we have fettered down the remedies provided by the legislature to the end result.

third parties, forgoing the statutory remedy against his former employer and collecting sums greater than Roberts's total damages. The release provision of the ODA is not unconstitutional as applied to the facts of this case.

## Conclusion

The dismissal of Roberts's application for compensation under the ODA was not premature because Roberts's Estate had obtained paid settlements and a judgment against liable third parties. The release of liability provision of the ODA is not unconstitutional as applied to the facts of this case.

Affirmed.

BAKER, C.J., and VAIDIK, J., concur.

### ORDER

On August 8, 2007, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Motion to Publish Order. The Appellee requests that this Court's opinion be published because it establishes a new rule of law as to the constitutionality of the Comparative Fault Act as applied in Workers' Compensation.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Motion to Publish Order is GRANTED and this Court's opinion heretofore handed down in this cause on August 8, 2007, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

BAKER, C.J., BAILEY and VAIDIK, JJ., concur.